# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYNOPSYS, INC. and<br>CADENCE DESIGN SYSTEMS, INC.,<br><br>       Plaintiffs,<br><br>    v.<br><br>BELL SEMICONDUCTOR, LLC,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C.A. No. 22-1512-CFC

DEMAND FOR JURY TRIAL

## PLAINTIFFS' OPENING BRIEF IN SUPPORT OF
## THEIR MOTION FOR PRELIMINARY INJUNCTION

Dated:  November 28, 2022

OF COUNSEL:

Krista S. Schwartz
Barrington Dyer
WILLKIE FARR & GALLAGHER LLP
One Front Street
San Francisco, CA 94111
(415) 858-7400
kschwartz@willkie.com
bdyer@willkie.com

Shaimaa Hussein
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Alexis M. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
pkraman@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

*Attorneys for Synopsys, Inc. and
Cadence Design Systems, Inc.*

shussein@willkie.com

Aliza George Carrano
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006
(202) 303-1000
acarrano@willkie.com

*Attorneys for Synopsys, Inc.*

Jeffrey A. Miller
Joseph Palmieri
ARNOLD & PORTER KAYE
SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306
(650) 319-4538
jeffrey.miller@arnoldporter.com
joseph.palmieri@arnoldporter.com

Matthew M. Wolf
Jennifer Sklenar
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
(202) 942-5786
matthew.wolf@arnoldporter.com
jennifer.sklenar@arnoldporter.com

Kurt Riester
Lindsay Strong
ARNOLD & PORTER KAYE
SCHOLER LLP
70 West Madison Avenue, Suite 4200
Chicago, IL 60602
(312) 583-2300
kurt.riester@arnoldporter.com

lindsay.strong@arnoldporter.com

*Attorneys for Cadence Design Systems, Inc.*

# TABLE OF CONTENTS

I.    NATURE OF THE CASE AND STAGE OF
      PROCEEDINGS .......................................................... 1

II.   INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

III.  STATEMENT OF FACTS ..................................................... 5

IV.   ARGUMENT ....................................................................... 7

      A.    This Court Should Enjoin BSLLC From Pursuing
            The Customer Suits Because This Case May Dispose
            Of Those Actions. .......................................................... 11

      B.    The Four-Factor Preliminary Injunction Test Also
            Supports An Injunction. .............................................. 12

            1.    Plaintiffs are likely to succeed in showing the
                  customer-suit exception applies. ....................... 13

            2.    Plaintiffs will suffer irreparable harm in the
                  absence of relief. ................................................... 17

            3.    Plaintiffs' injury outweighs any potential harm
                  to BSLLC because BSLLC can be fully
                  compensated with money damages. ................. 20

            4.    Enjoining BSLLC from participating in the
                  Customer Suits is in the public's interest. ....... 21

V.    CONCLUSION ................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012) ....................................................................20

*Advanced Micro Devices, Inc. v. S3 Graphics Co.*,
    No. CIV.A. 11-965, 2011 WL 5402667 (D. Del. Nov. 8, 2011) ..................10

*Amgen Inc. v. Hospira, Inc.*,
    No. 20-0561, 2021 WL 65065 (D. Del. Jan. 7, 2021)...................................20

*Beacon Photo Serv., Inc. v. Acricite Co.*,
    No. 78-1295, 1978 WL 21454 (E.D.N.Y. Sept. 12, 1978)..............................8

*Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found.*,
    402 U.S. 313 (1971)............................................................................... 11, 21

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
    664 F.3d 922 (Fed. Cir. 2012) ....................................................................19

*Certain EPROM, EEPROM, Flash Memory, & Flash Microcontroller*
    *Semiconductor Devices, & Prods. Containing Same*,
    No. 337-TA-395, 1998 WL 35428257 (USITC Oct. 1, 1998).....................11

*Ciena Corp. v. Nortel Networks Inc.*,
    No. 2:05 CV 14, 2005 WL 1189881 (E.D. Tex. May 19, 2005)....................9

*Codex Corp. v. Milgo Elec. Corp.*,
    553 F.2d 735 (1st Cir. 1977)..........................................................................7

*CogniPower LLC v. Fantasia Trading, LLC*,
    No. 19-2293, 2021 WL 327389 (D. Del. Feb. 1, 2021) ...............................19

*Cordance Corp. v. Amazon.com, Inc.*,
    730 F. Supp. 2d 333 (D. Del. 2010) ...........................................................20

*CyWee Grp. Ltd. v. Huawei Device Co.*,
    No. 2:17-495, 2018 WL 4002776 (E.D. Tex. Aug. 22, 2018) .....................14

*Decapolis Sys., LLC v. Univ. Health Sys. Servs. of Texas, Inc.*,
    No. 6:21-01252, 2022 WL 2373705 (W.D. Tex. June 30, 2022) ................14

*Dicar, Inc. v. L. E. Sauer Mach. Co.*,
    530 F. Supp. 1083 (D.N.J. 1982) .....................................................................8

*Finisar Corp. v. Cheetah Omni, LLC*,
    No. 11-15625, 2012 WL 12931575 (E.D. Mich. Nov. 19, 2012) ......... *passim*

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*,
    651 F.3d 1355 (Fed. Cir. 2011) ......................................................... 9, 13, 18

*Glenayre Elecs., Inc. v. Jackson*,
    443 F.3d 851 (Fed. Cir. 2006) ......................................................................16

*GreatGigz Sols., LLC v. Costco Wholesale Corp.*,
    No. 6:21-00807, 2022 WL 1037114 (W.D. Tex. Apr. 6, 2022)....................17

*In re Google Inc.*,
    588 F. App'x 988 (Fed. Cir. 2014) ..............................................................15

*In re Nintendo of Am., Inc.*,
    756 F.3d 1363 (Fed. Cir. 2014) ....................................................................4

*In re Trs. of Bos. Univ. Pat. Cases*,
    No. 13-12327, 2014 WL 12576638 (D. Mass. May 16, 2014) ....................16

*Kaisha v. Bombardier, Inc.*,
    No. 00-549, 2001 WL 1388911 (C.D. Cal. Mar. 9, 2001) ...........................10

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ........................................................... *passim*

*Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*,
    39 F.4th 1377 (Fed. Cir. 2022) .....................................................................10

*Lab. Corp. of Am. Holdings v. Chiron Corp.*,
    384 F.3d 1326 (Fed. Cir. 2004) .............................................................. 8, 22

*Lab'y Corp. of Am. Holdings v. Chiron Corp.*,
    384 F.3d 1326 (Fed. Cir. 2004) ...................................................................22

*Lighthouse Consulting Grp., LLC v. Trust Bank*,
    No. 2:19-00340, 2020 WL 6781977 (E.D. Tex. Apr. 7, 2020)....................14

*Pragmatus Telecom, LLC v. Advanced Store Co.*,
   No. 12-088, 2012 WL 2803695 (D. Del. July 10, 2012).........................7, 13

*ProBatter Sports, LLC v. Joyner Techs., Inc.*,
   463 F. Supp. 2d 949 (N.D. Iowa 2006) .............................................4, 8, 9, 12

*Ricoh Co. v. Aeroflex Inc.*,
   279 F. Supp. 2d 554 (D. Del. 2003) ................................................................7

*SpeedTrack, Inc. v. Off. Depot, Inc.*,
   791 F.3d 1317 (Fed. Cir. 2015) ....................................................................11

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
   657 F.3d 1349 (Fed. Cir. 2011) ......................................................................7

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*,
   458 F.3d 1335 (Fed. Cir. 2006) ......................................................................7

*Telebrands Corp. v. Nat'l Exp., Inc.*,
   No. 12-6671, 2014 WL 4930897 (D.N.J. Oct. 2, 2014)................................16

*Texas Instruments Inc. v. Tessera, Inc.*,
   231 F.3d 1325 (Fed. Cir. 2000) ................................................................9, 13

*Ultra Prods., Inc. v. Best Buy Co.*,
   No. 09-1095, 2009 WL 2843888 (D.N.J. Sept. 1, 2009) ..............................12

*William Gluckin & Co. v. Int'l Playtex Corp.*,
   407 F.2d 177 (2d Cir. 1969) ...........................................................................8

*Young Engineers, Inc. v. U.S. Int'l Trade Comm'n*,
   721 F.2d 1305 (Fed. Cir. 1983) ...............................................................11, 21

**Statutes**

28 U.S.C. § 1659.....................................................................................................3

iv

## I.    NATURE OF THE CASE AND STAGE OF PROCEEDINGS

On November 18, 2022, Plaintiffs Cadence Design Systems, Inc. and Synopsys, Inc. (collectively, "Plaintiffs") filed a declaratory judgment complaint ("DJ Action") against Bell Semiconductor, LLC ("BSLLC"), seeking a declaration that U.S. Patent Nos. 6,436,807 ("the '807 Patent), 7,007,259 ("the '259 Patent"), 7,149,989 ("the '989 Patent"), 7,231,626 ("the '626 Patent"), 7,260,803 ("the '803 Patent"), and 7,396,760 ("the '760 Patent") (collectively, "Asserted Patents") are neither infringed nor valid.  Plaintiffs commenced this DJ Action in response to the massive litigation campaign BSLLC launched against various of Plaintiffs' direct and downstream customers ("Customers"), involving 89 lawsuits filed in over a dozen district courts and before the International Trade Commission ("ITC") (collectively, "Customer Suits").

The Customer Suits involve the very same infringement and invalidity issues presented in the DJ Action: (1) whether processes performed by Plaintiffs' design tools infringe the claims of the Asserted Patents; and (2) whether the Asserted Patents are invalid.  *See generally* D.I. 1.  Because the DJ Action provides the far most efficient means for resolving these core issues, Plaintiffs seek to enjoin BSLLC from proceeding with the Customer Suits pending resolution of this DJ Action.

## II.    INTRODUCTION AND SUMMARY OF ARGUMENT

To date, BSLLC has commenced 87 district court actions in 13 different districts, in front of over 40 district judges, against 25 chip companies.  D.I. 1, ¶10,

Ex. M.  BSLLC asserts different combinations of the Asserted Patents in multiple lawsuits against each Customer, creating a complicated morass of litigation.  BSLLC also started two ITC investigations against 15 of Plaintiffs' Customers and seven downstream customers of Plaintiffs' Customers, alleging infringement of three of the Asserted Patents.  D.I. 1, ¶11.  There, BSLLC seeks to bar the Customers' importation of products allegedly designed using Plaintiffs' tools even though BSLLC (a non-practicing entity) does not compete against the Customers, as it neither makes nor sells any products of its own.  D.I. 1, ¶¶8, 78 (pp. 36-37), 82, 84, 88.

Compounding the mess of BSLLC's district court and ITC actions is the fact that BSLLC names Plaintiffs' Customers—rather than Plaintiffs—as defendants and respondents, even though BSLLC's allegations are directed to *Plaintiffs'* design tools.  *See* D.I. 1, ¶¶23, 46-48, 50, 59-61, 66-68, 71-73, 78-80 (pp. 36-38), 85.  All six of the Asserted Patents relate to data-manipulation methods used for designing chips, and BSLLC's complaints identify processes allegedly performed by Plaintiffs' design tools—not the chips sold by Plaintiffs' Customers—as the "accused processes" implicated by the Asserted Patents.  D.I. 1, ¶¶46, 50, 60, 66-67, 72, 79-80 (pp. 37-38), 85.  Thus, unsurprisingly, many Customers have requested defense and/or indemnity from Plaintiffs.  D.I. 1, ¶¶14, 54; Sheng Decl., ¶4; Kittrell Decl., ¶6.

BSLLC is thus engaging in a litigation campaign that will require Plaintiffs, whether through defense obligations or intervention to protect their interests, to simultaneously litigate a significant number of cases involving the same core issues, which would be exceedingly expensive, impractical, and unfair. BSLLC also appears intent on creating as much pressure as possible on Plaintiffs' Customers, no doubt hoping some will settle rather than deal with multiple, burdensome litigations. For instance, because BSLLC asserts only a subset of the Asserted Patents at the ITC, the district court lawsuits against the same Customers are not subject to an automatic stay (*see* 28 U.S.C. § 1659) and thus may continue in parallel with the ITC actions. And BSLLC has opposed stays of the district court suits notwithstanding their overlap with the ITC actions. Thus, inconsistent findings will be likely, and the common issues of infringement and invalidity will be determined in the least efficient way possible.

To avoid these harms, this Court can and should enjoin BSLLC from pursuing its Customer Suits until this case is resolved, for at least the following reasons:

1.    Although BSLLC filed the Customer Suits before Plaintiffs commenced this DJ Action, the "customer-suit exception" applies and favors resolving the DJ Action first. Under the exception, "designed to facilitate just, convenient, efficient, and less expensive" dispute resolution, the DJ Action by Plaintiffs, the producers of the tools that perform the allegedly infringing processes,

"take[s] precedence" over the customer suits.  *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014).

2.    This Court can enjoin BSLLC from participating in duplicative proceedings to effectuate the customer-suit exception.  *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990); *ProBatter Sports, LLC v. Joyner Techs., Inc.*, 463 F. Supp. 2d 949, 956 (N.D. Iowa 2006).  Because resolution of the DJ Action in Plaintiffs' favor would fully resolve the Customer Suits, an injunction is appropriate.

3.    Application of the four-factor preliminary injunction test also favors the requested relief.  Each of the factors supports an injunction as: (a) Plaintiffs are likely to succeed in establishing that the customer-suit exception to the first-to-file rule applies; (b) BSLLC's extensive litigation campaign against Plaintiffs' Customers is causing Plaintiffs pecuniary harm and irreparably straining customer relationships; (c) the balance of hardships favors an injunction as BSLLC is a non-practicing entity and, should it ultimately prevail, can be adequately compensated with monetary damages; and (d) injunctive relief would serve the public interest by dramatically reducing litigation costs and the burden on the judiciary by resolving core issues in a single forum, while promoting uniform application of the patent laws.  *See Finisar Corp. v. Cheetah Omni, LLC*, No. 11-15625, 2012 WL 12931575, at *2 (E.D. Mich. Nov. 19, 2012).

## III.  STATEMENT OF FACTS

Plaintiffs are two of the largest suppliers of Electronic Design Automation ("EDA") software design tools, used by the semiconductor industry to create chip designs.  D.I. 1, ¶2.  Customers use Plaintiffs' EDA design tools to create design data subsequently used for manufacturing chips, which are then used in a variety of applications, including computing, automotive, mobile, aerospace, industrial equipment, and healthcare.  D.I. 1, ¶¶3-7.  Among Plaintiffs' Customers are the semiconductor companies BSLLC now accuses of infringement.  D.I. 1, ¶7.

BSLLC is a litigation-financed patent monetization entity.  D.I. 1, ¶8.  While patent monetization is not *per se* improper, BSLLC's abusive approach is unreasonably burdensome to Plaintiffs, their Customers, and the judiciary.  BSLLC asserts the six Asserted Patents against 25 of Plaintiffs' Customers in 87 lawsuits in over a dozen different federal courts before over 40 different judges.  D.I. 1, ¶10, Ex. M (list of district court cases).  Although BSLLC does not practice the Asserted Patents itself, it also seeks exclusion orders from the ITC that would bar importation of chips made or sold by the Customers.  D.I. 1, ¶11 (list of ITC proceedings).

The Asserted Patents, however, are not directed to chips.  They relate to methods or steps for manipulating design data when *designing* chips.  D.I. 1, ¶¶28, 30, 32, 34, 36, 38, 46, 59, 65-67, 71, 77-78 (p. 35).  The '259, '803, '807, and '760 Patents, for instance, relate to algorithms for inserting into design data "dummy

metal fill," representing nonfunctional metal shapes, in open areas in a semiconductor design. D.I. 1, ¶¶26, 28, 30, 32, 34. And the '626 and '989 Patents relate to methods for implementing an engineering change order (ECO) and performing physical design validation of chip design data. D.I. 1, ¶¶36, 38.

Accordingly, BSLLC's complaints devote little-to-no space to the Customers' products. Instead, they focus on Customers' use of *Plaintiffs'* EDA design tools, including Synopsys' IC Compiler and IC Validator tools and Cadence's Innovus, Pegasus, and PVS tools. D.I. 1, ¶¶13, 23, 46-48, 50, 59-61, 66-68, 71-73, 78-80 (pp. 36-38), 85. Indeed, while every complaint attaches a claim chart purporting to show how the *Customers* infringe the Asserted Patents, each claim chart compares the patent claims to *Plaintiffs'* EDA design tools. D.I. 1, ¶¶46, 50, 60, 66-67, 72, 79-80 (pp. 37-38), 85. In other words, the sole basis for BSLLC's infringement allegations in the Customer Suits is its assertion that Plaintiffs' EDA design tools perform processes that infringe the Asserted Patents.

While BSLLC has not named Plaintiffs as defendants in any of the Customer Suits, Plaintiffs are inextricably involved. Plaintiffs provide their EDA design tools to the Customers pursuant to license agreements. D.I. 1, ¶14. Many of those agreements contain defense and/or indemnity provisions relating to allegations of patent infringement. *Id.* And many of the Customers, therefore, have provided

notice of suit to Plaintiffs and requested defense and/or indemnity for BSLLC's allegations.[1]  *Id.*; Sheng Decl., ¶4; Kittrell Decl., ¶6.

## IV.    ARGUMENT

Although the first party to file a lawsuit is generally given its preferred venue, there are exceptions to this first-to-file rule, including the "customer-suit exception." *See Ricoh Co. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 557-58 (D. Del. 2003).  Under this exception, which "guard[s] against [the] possibility of abuse," a DJ action brought by the manufacturer of accused products should be resolved before earlier-filed suits against the manufacturer's customers.  *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (quoting *Katz*, 909 F.2d at 1464).  At its root is the recognition that "a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz*, 909 F.2d at 1464 (quoting *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir. 1977)).  The "guiding principles" for the exception are "efficiency and judicial economy." *Pragmatus Telecom, LLC v. Advanced Store Co.*, No. 12-088, 2012 WL 2803695, at *3 (D. Del. July 10, 2012) (quoting *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006)).

---

[1] Cadence is currently providing defense for Customers in 10 Customer Suits.

To effectuate the exception, courts have enjoined parties from prosecuting earlier-filed customer suits so that manufacturers could first pursue their later-filed DJ cases. *E.g.*, *Katz*, 909 F.2d at 1464 (affirming injunction preventing patentee from pursuing customer suits pending resolution of "manufacturer" suit); *ProBatter Sports*, 463 F. Supp. 2d at 956 (enjoining customer suit pending resolution of "manufacturer" suit); *Finisar*, 2012 WL 12931575, at *6 (same); *Beacon Photo Serv., Inc. v. Acricite Co.*, No. 78-1295, 1978 WL 21454, at *4 (E.D.N.Y. Sept. 12, 1978) (same); *Dicar, Inc. v. L. E. Sauer Mach. Co.*, 530 F. Supp. 1083, 1091 (D.N.J. 1982) (enjoining lawsuit against sales representative pending resolution of "manufacturer" suit); *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 180 (2d Cir. 1969) (affirming injunction of suit against customer pending resolution of "manufacturer" suit).

In *Katz,* the Federal Circuit[2] noted it was unnecessary to consider the four-factor preliminary injunction test to determine whether to enjoin another action under the customer-suit exception. *Katz*, 909 F.2d at 1463. This is because the four-factor test "was developed to test the grant of the requested remedy before the case has been tried on the merits," whereas the "question of whether to enjoin the

---

[2] Federal Circuit law applies to this issue. *Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1331 (Fed. Cir. 2004) ("[I]njunctions arbitrating between co-pending patent declaratory judgment and infringement cases in different district courts are reviewed under the law of the Federal Circuit.").

prosecution of concurrent litigation" should instead be "whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Id.*; *see also ProBatter Sports*, 463 F. Supp. 2d at 955 (enjoining customer suit without considering the factors).

Even so, some courts have considered the four-factor test when determining whether to enjoin another action. *E.g.*, *Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1328 (Fed. Cir. 2000) (vacating denial of motion to enjoin parallel ITC action in view of forum-selection clause). The traditional factors are: (1) a reasonable likelihood of success on the merits; (2) irreparable harm absent injunctive relief; (3) the balance of hardships; and (4) a public interest in favor of the injunction. *Id.* at 1329; *see also Finisar*, 2012 WL 12931575, at *4-6 (enjoining customer suit after considering the four *permanent* injunction factors).

To date, few courts have been asked to enjoin participation in ITC proceedings, and courts have only done so in limited instances, such as where a forum-selection clause obligated parties to litigate elsewhere. *E.g.*, *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355 (Fed. Cir. 2011); *Ciena Corp. v. Nortel Networks Inc.*, No. 05-14, 2005 WL 1189881 (E.D. Tex. May 19, 2005). And courts have declined to enjoin participation in ITC proceedings in favor of a DJ case where the same parties were litigants in both cases—*i.e.*, where the customer-suit exception

was not implicated.  *E.g.*, *Kaisha v. Bombardier, Inc.*, No. 00-549, 2001 WL 1388911, at *2 (C.D. Cal. Mar. 9, 2001).

Regardless, Plaintiffs are unaware of any cases on all fours with this one, where the customer-suit exception applies and a party has engaged in a massive litigation campaign against dozens of the movant's customers, triggering defense and/or indemnity claims and threatening to impose significant burdens on the judiciary.  While a court in this District declined a manufacturer's request to enjoin the patentee from participating in ITC proceedings in *Advanced Micro Devices, Inc. v. S3 Graphics Co.*, No. 11-965, 2011 WL 5402667 (D. Del. Nov. 8, 2011), that case presented very different facts: The ITC case had progressed to an advanced stage (an initial determination had already issued), and the specific issue presented in the district court action (patent ownership) had already been fully briefed to the ITC.  *Id*. Here, by contrast, the ITC proceedings are in their infancy.  The first was instituted on November 8, 2022, the second on November 23, and no major issues have been briefed, much less resolved.[3]

Given the extraordinary circumstances of this case, and its potential to fully resolve the 87 district court cases and two ITC proceedings naming Plaintiffs'

---

[3] This case is also unlike *Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377 (Fed. Cir. 2022), which did not involve the customer-suit exception and 89 Customer Suits.

Customers as defendants and respondents, the Court should exercise its discretion to enjoin BSLLC's participation in its Customer Suits.

### A.    This Court Should Enjoin BSLLC From Pursuing The Customer Suits Because This Case May Dispose Of Those Actions.

BSLLC's infringement claims are based on the Customers' use of Plaintiffs' tools.  Here, Plaintiffs seek declarations that use of their tools does not infringe the Asserted Patents and that the Asserted Patents are invalid.  D.I. 1.  Should Plaintiffs prevail on either ground, it will resolve the Customer Suits.  This is true of both: (1) the district court suits, *see Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 349-50 (1971) (issue-preclusion can bar patentees from relitigating validity against different defendants); *SpeedTrack, Inc. v. Off. Depot, Inc.*, 791 F.3d 1317, 1324-29 (Fed. Cir. 2015) (*Kessler* doctrine precluded patentee from asserting customers' use of software infringed after manufacturer obtained judgment of noninfringement); and (2) the ITC investigations, *see Young Engineers, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1316 (Fed. Cir. 1983) (ITC subject to preclusive effects of district court patent infringement cases); *Certain EPROM, EEPROM, Flash Memory, & Flash Microcontroller Semiconductor Devices, & Prods. Containing Same*, Inv. No. 337-TA-395, 1998 WL 35428257, at *8 (USITC Oct. 1, 1998) (giving issue-preclusive effect to district court finding of invalidity).

The rationale underlying the customer-suit exception—the manufacturer's interest in defending its goods or services against charges of patent infringement and

"guard[ing] against possibility of abuse" (*Ultra Prods., Inc. v. Best Buy Co.*, No. 09-1095, 2009 WL 2843888, at *3 (D.N.J. Sept. 1, 2009) (quotations omitted))—is plainly present here and further supports enjoining BSLLC.  As BSLLC's claim charts attached to the Customer Suit complaints show, BSLLC accuses use of Plaintiffs' design tools of infringement—not the Customers' chips themselves.  *See, e.g.*, Ex. 2[4] (exemplary customer complaint) at Ex. C, 3-22 (comparing '803 patent claims to manual for Cadence's Innovus tool).  It is Plaintiffs who developed and sell those accused tools.  D.I. 1, ¶¶13, 15, 23, 46-48, 50, 59-61, 66-68, 71-73, 78-80 (pp. 36-38), 85.  And it is Plaintiffs who have the greatest understanding of those tools.  *See* D.I. 1, ¶¶23, 83.  Plaintiffs, therefore, have a strong interest in defending their products before this Court, including in view of potential defense and/or indemnification obligations to Customers.

Because this DJ Action will afford the parties who developed and sell the design tools at issue the ability to first litigate the dispositive issues, this Court should enjoin BSLLC from proceeding with the Customer Suits until this case is resolved.  *Katz*, 909 F.2d at 1464; *ProBatter Sports*, 463 F. Supp. 2d at 956.

### B.    The Four-Factor Preliminary Injunction Test Also Supports An Injunction.

Although it need not be considered under Federal Circuit authority, the traditional four-factor test also supports an injunction.

---

[4] Exs. 1-9 are attached to the Kraman Decl., submitted herewith.

####    1.    Plaintiffs are likely to succeed in showing the customer-suit exception applies.

When determining whether to enjoin parallel patent litigation, courts do not consider whether the movant is likely to succeed on the merits of the underlying infringement dispute, but rather whether the movant is likely to succeed in establishing that its case should take precedence.[5]    For instance, in *Texas Instruments*, 231 F.3d at 1329-32, the court considered whether the movant was likely to succeed in establishing that its forum-selection clause applied to prevent the patentee from proceeding with its ITC investigation—not whether the movant was likely to succeed in the underlying dispute. *See also Gen. Protecht*, 651 F.3d at 1359-63 (same); *cf. Finisar*, 2012 WL 12931575, at *4-6 (considering four permanent injunction factors and thus not considering the underlying merits).  Thus, the relevant consideration is the likelihood Plaintiffs will succeed in establishing that the customer-suit exception applies, which is readily demonstrated.

Courts consider three factors to determine whether the exception applies: "(1) whether the Customers are merely resellers; (2) whether the Customers agree to be bound by any decision in the Manufacturer's case; and (3) whether the Manufacturer is the sole source of [accused] infringing products."  *Pragmatus Telecom*, 2012 WL 2803695, at *3.  But "the Court does not apply the factors in a mechanical or precise

---

[5] Regardless, as Plaintiffs' complaint demonstrates, Plaintiffs are also likely to succeed in demonstrating both non-infringement and invalidity.  D.I. 1, ¶¶91-157.

manner and instead adopts a flexible approach in order to assess whether judicial resources will be saved." *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 17-495, 2018 WL 4002776, at *5 (E.D. Tex. Aug. 22, 2018).  Here, each factor weighs in favor of the customer-suit exception.

*First*, the "mere resellers" factor weighs in favor of the exception because the Customers are simply end users of the accused software tools.  Courts find this factor satisfied where customers are not themselves involved in the creation or development of the accused technology but instead merely use it.  *E.g.*, *Decapolis Sys., LLC v. Univ. Health Sys. Servs. of Texas, Inc.*, No. 21-1252, 2022 WL 2373705, at *2-3 (W.D. Tex. June 30, 2022); *Lighthouse Consulting Grp., LLC v. Trust Bank*, No. 19-340, 2020 WL 6781977, at *2 (E.D. Tex. Apr. 7, 2020) (customers were "equivalent" to resellers where they neither "developed [n]or created the mobile deposit technology at issue" but instead "merely license[d] that technology" from the developer thereof).

Here, the Customers license tools that perform the accused processes from Plaintiffs and thus are akin to "mere resellers" for purposes of the exception.  *See* D.I. 1, ¶¶14, 18; Sheng Decl., ¶4; Kittrell Decl., ¶5.  The Customers neither created nor developed the accused software tools.  *See id*.  And as discussed above, BSLLC's filings confirm nothing about each Customer's use of the tools is relevant to BSLLC's infringement analysis: Bell's claim charts only compare the Asserted

14

Patent claims to Plaintiffs' design tools—not to Customers' products.  *See, e.g.,* Ex. 1 at Exs. B, E; Ex. 2 at Exs. C, D; Ex. 3 at Ex. B; Ex. 4 at Ex. B; Ex. 5 at Ex. B; Ex. 6 at Exs. C, D; Ex. 7 at Ex. B; Ex. 8 at Exs. B, E (exemplary claim charts).  This factor thus favors the customer-suit exception.  *In re Google Inc.*, 588 F. App'x 988, 990 (Fed. Cir. 2014) (reversing denial of motion to stay customer suits where patentee "provided nearly identical infringement contentions to all defendants that rely almost exclusively on the underlying functionalities provided in the base Android source code provided by [the supplier]").

*Second*, efficiencies achievable through an injunction favor the exception even assuming the Customers do not agree to be bound by this DJ action.  The Federal Circuit's analysis in *Katz* is instructive.   There, the manufacturer's customers did not agree to be bound by the results of manufacturer's lawsuit with the patentee.  *Katz*, 909 F.2d at 1464.  Still, the court affirmed an injunction against customer suits in view of the possibility that the "resolution of the major issues" in the manufacturer suit, "including patent infringement [and] patent validity . . . will resolve these issues as to their customers."  *Id*.   This was despite the court's acknowledgement that there could be "additional issues involving the defendants in the [customer] action" that would not be fully resolved by the manufacturer's suit. *Id*.

Just so here.  Even if Customers do not agree to be bound by the results of this case, an injunction will conserve significant judicial resources.  If Plaintiffs are successful in establishing non-infringement or invalidity of the Asserted Patents, many if not all of the Customer Suits will be mooted.  Even if use of Plaintiffs' tools were found to infringe a valid claim of the Asserted Patents (they do not), such a finding would likely simplify BSLLC's claims against the Customers by, for example, reducing the total number of asserted claims and patents and resolving, or at least narrowing, claim construction disputes.

In addition, BSLLC may exhaust its rights as a patent holder such that it cannot seek additional damages for downstream use of Plaintiffs' design tools by the Customers.  *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 858-73 (Fed. Cir. 2006) (patentee was fully compensated by monetary award from supplier for infringement by supplier's customers); *Telebrands Corp. v. Nat'l Exp., Inc.*, No. 12-6671, 2014 WL 4930897, at *6 (D.N.J. Oct. 2, 2014) (possibility of exhaustion supported customer-suit exception even absent agreement to be bound).  Even if BSLLC's rights are not exhausted, as a practical matter, a finding of infringement against Plaintiffs "may encourage settlement" among the Customers.  *In re Trs. of Bos. Univ. Pat. Cases*, No. 13-12327, 2014 WL 12576638, at *4 (D. Mass. May 16, 2014).  Thus, BSLLC's claims against Plaintiffs' Customers will be "significantly

simplif[ied]." *GreatGigz Sols., LLC v. Costco Wholesale Corp.*, No. 21-807, 2022 WL 1037114, at *3 (W.D. Tex. Apr. 6, 2022).

*Third*, Plaintiffs are the sole manufacturers of the design tools BSLLC has charted and accused of infringement in the Customer Suits.  D.I. 1, ¶¶46, 50, 60, 66-67, 72, 79-80 (pp. 37-38), 85.  As discussed above, the basis for BSLLC's infringement allegations against the Customers is that they allegedly use one or more of Plaintiffs' design tools in a manner that infringes the Asserted Patents.[6]  This factor thus weighs in favor of the customer-suit exception.  *E.g.*, *GreatGigz Sols.*, 2022 WL 1037114, at *3.

### 2. Plaintiffs will suffer irreparable harm in the absence of relief.

Plaintiffs will suffer at least two forms of irreparable harm if BSLLC is not enjoined from participating in the Customer Suits.  First, Plaintiffs will be irreparably harmed if infringement allegations relating to their tools are adjudicated simultaneously in many different forums, especially in proceedings in which they are not yet defending a Customer.  Even if Plaintiffs intervened in such cases, they would be forced to expend valuable time, energy, and finances battling 89 largely duplicative actions, the cost of which would be staggering.

---

[6] While BSLLC's Customer Suit complaints mention another EDA tool provider, Siemens, no Siemens products are named or charted.

According to AIPLA's 2021 Economic Survey, the median cost of defending a claim of patent infringement under a single patent by a non-practicing entity like BSLLC (assuming more than $25 million at risk) through trial and appeal was $4.0 million in 2020. Ex. 9 (AIPLA Report), 61. And the median cost of defending a claim of patent infringement with the same exposure at the ITC through trial and appeal was $8.125 million. *Id.*, 62. Even though Plaintiffs might leverage common arguments and evidence across numerous proceedings, the expense to Plaintiffs will still be astronomical.

Courts recognize that litigating the same issues in multiple forums causes irreparable harm—even when far fewer cases are involved. *See Finisar*, 2012 WL 12931575, at *4 ("Plaintiff has demonstrated that it has suffered irreparable injury by being forced to indemnify its customers in the [customer suit]."); *Gen. Protecht*, 651 F.3d at 1363-64 (recognizing that forcing party to litigate in the ITC and district courts simultaneously notwithstanding forum-selection clause constituted irreparable harm).

Second, Plaintiffs will suffer harm to their customer relationships. Sheng Decl., ¶¶5-6; Kittrell Decl., ¶¶6, 10-11. Again, BSLLC's complaints allege Plaintiffs' Customers infringe by using Plaintiffs' design tools. D.I. 1, ¶¶13, 46, 50, 60, 66-67, 72, 79-80 (pp. 37-38), 85. Even where Plaintiffs have agreed to provide defense, Customers will be displeased to have to deal with the burden of patent

litigation, including discovery obligations, simply because they licensed Plaintiffs' tools. It also follows that other current or prospective customers of Plaintiffs' design tools could face similar infringement allegations and be subject to suit. *CogniPower LLC v. Fantasia Trading, LLC*, No. 19-2293, 2021 WL 327389, at *1 (D. Del. Feb. 1, 2021) (allowing manufacturer to intervene in patent suit in part because a "judgment against [manufacturer's customer] would likely dissuade existing and potential [manufacturer's] customers from buying [the accused product]").

Absent a preliminary injunction, therefore, BSLLC's pursuit of its Customer Suits will harm Plaintiffs' customer relationships. This type of harm is unique, difficult to quantify, and therefore irreparable. *See Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("loss of goodwill" constitutes irreparable harm).

Relatedly, Plaintiffs have already had some disputes with their Customers about the scope of defense and/or indemnity obligations, and should the Customer Suits proceed, additional disputes may occur. Sheng Decl., ¶6; Kittrell Decl., ¶¶6, 11. Such disputes strain Plaintiffs' relationships with their Customers, damaging Plaintiffs' goodwill and the potential for future business opportunities. *See Finisar*, 2012 WL 12931575, at *4 (potential disputes with customers over indemnification requests constituted irreparable harm).

### 3. Plaintiffs' injury outweighs any potential harm to BSLLC because BSLLC can be fully compensated with money damages.

The balance of hardships also favors granting the requested relief.  BSLLC will not suffer material hardship should it be enjoined from proceeding with its Customer Suits while this case is pending because BSLLC is a non-practicing entity. D.I. 1, ¶8.  BSLLC neither makes nor sells any products or services of its own and is not in competition with Plaintiffs or their Customers.  *Id*.  Any harm suffered from the alleged infringement is financial in nature and can be fully compensated with monetary damages should BSLLC ultimately prevail in showing infringement of valid claims.  *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1338 (Fed. Cir. 2012) (readily quantifiable infringement does not cause irreparable harm); *Cordance Corp. v. Amazon.com, Inc.*, 730 F. Supp. 2d 333, 339-41 (D. Del. 2010) (no irreparable harm where parties were not direct competitors); *see also Amgen Inc. v. Hospira, Inc.*, No. 20-0561, 2021 WL 65065, at *2 (D. Del. Jan. 7, 2021) (staying co-pending patent case in part because patentee did not demonstrate delay would cause it undue prejudice).

Plaintiffs, conversely, will suffer irreparable hardship absent an injunction, as described *supra*, Section IV.B.2.  As a further example, certain of Plaintiffs' key technical personnel could be subject to repeated depositions over the design of the tools in each of the 89 Customer Suits, creating untold business interruptions.

### 4.    Enjoining BSLLC from participating in the Customer Suits is in the public's interest.

The public interest also overwhelmingly favors issuing an injunction.

*First,* enjoining BSLLC from participating in the Customer Suits pending Plaintiffs' DJ Action will promote judicial economy by alleviating the significant burden BSLLC's scorched earth litigation campaign has imposed on the federal judiciary.  As shown in Plaintiffs' Complaint, BSLLC has commenced 89 different proceedings, including: (i) 87 district court actions in 13 different districts, pending in front of over 40 different judges, against 25 chip companies; and (ii) two ITC proceedings.  D.I. 1, Exs. M, N.  Should Plaintiffs prevail on either infringement or invalidity of the Asserted Patents, it will dispose of the myriad cases pending before the other tribunals.  *See Blonder-Tongue*, 402 U.S. at 349-50; *Young Engineers*, 721 F.2d at 1316.

*Second*, reducing burden on Customers is also in the public interest.  An injunction would save Customers significant resources and litigation costs.  While it is difficult to predict the total defense costs for the Customers, it would doubtless reach high eight figures—money better spent employing workers and investing in innovative products that benefit the public.  *See* Ex. 9, 61-62 (AIPLA's 2021 Economic Survey with litigation costs).  And while the public may have an interest in some ITC investigations, this case presents a rare exception because BSLLC is a non-practicing entity using unfair litigation tactics to disrupt the business of the

Plaintiffs and their Customers, all of which are critical to the U.S. semiconductor industry.

Finally, courts value uniformity in patent law. *Lab. Corp.*, 384 F.3d at 1330. Enjoining BSLLC from participating in Customer Suits until this case is resolved will further the favored policy of uniformity: the invalidity and infringement issues will be resolved in one forum with preclusive effect on BSLLC in the Customer cases, ensuring a consistent application of law and outcome.

## V.    CONCLUSION

Plaintiffs respectfully request the Court enjoin BSLLC from participating in the Customer Suits and pursuing any new customer suits while this Court adjudicates Plaintiffs' DJ Action.

Dated: November 28, 2022

OF COUNSEL:

Krista S. Schwartz
Barrington Dyer
WILLKIE FARR & GALLAGHER
LLP
One Front Street
San Francisco, CA 94111
(415) 858-7400
kschwartz@willkie.com
bdyer@willkie.com

Shaimaa Hussein

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

 /s/ Pilar G. Kraman
Anne Shea Gaza (No. 4093)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Alexis M. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
pkraman@ycst.com
rvrana@ycst.com

22

WILLKIE FARR & GALLAGHER
LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
shussein@willkie.com

Aliza George Carrano
WILLKIE FARR & GALLAGHER
LLP
1875 K Street, N.W.
Washington, DC 20006
(202) 303-1000
acarrano@willkie.com

*Attorneys for Synopsys, Inc.*

Jeffrey A. Miller
Joseph Palmieri
ARNOLD & PORTER KAYE
SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306
(650) 319-4538
jeffrey.miller@arnoldporter.com
joseph.palmieri@arnoldporter.com

Matthew M. Wolf
Jennifer Sklenar
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
(202) 942-5786
matthew.wolf@arnoldporter.com
jennifer.sklenar@arnoldporter.com

Kurt Riester
Lindsay Strong

astombaugh@ycst.com

*Attorneys for Synopsys, Inc. and*
*Cadence Design Systems, Inc.*

23

ARNOLD & PORTER KAYE
SCHOLER LLP
70 West Madison Avenue, Suite 4200
Chicago, IL 60602
(312) 583-2300
kurt.riester@arnoldporter.com
lindsay.strong@arnoldporter.com

*Attorneys for Cadence Design Systems, Inc.*