UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYNOPSYS, INC. and<br>CADENCE DESIGN SYSTEMS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BELL SEMICONDUCTOR, LLC,<br><br>Defendant. | CIVIL ACTION<br><br>C.A. No.: 1:22-cv-01512<br><br>DEMAND FOR JURY TRIAL |

### Declaration of Kam Kittrell

I, Kam Kittrell, hereby declare as follows:

1. I am a Vice President, Product Management & Business Development, Digital & Signoff Group for Cadence Design Systems, Inc. ("Cadence"). I have held this role for approximately five months. Prior to this role, I held substantially the same responsibilities under a different title—Senior Group Director, Digital and Signoff Marketing—for approximately two and a half years. Before that, I served as North America Digital Implementation and Signoff AE Manager; and Solutions Group Director, DSG - Digital Implementation for around five years and one year, respectively. All told, I have been with Cadence for over eight and a half years. Unless otherwise stated, I have personal knowledge of the matters stated in this declaration.

2. Through my role and work at Cadence, I have personal knowledge regarding Cadence's relationships with its customers, including a general understanding of the license agreements under which Cadence provides its Electronic Design Automation ("EDA") software tools.

3. I understand that the following entities have been accused of patent infringement by Bell Semiconductor, LLC ("Bell"): Ambarella, Advanced Micro Devices, Ampere Computing, Analog Devices, ASMedia Technology, Infineon, Kioxia, Lattice Semiconductor, MACOM, Marvell, Maxlinear, Micron, NVIDIA, NXP, Omnivision, ams-OSRAM, Phison Electronics, Qualcomm, Rockchip Electronics, Sequans Communications, Silicon Laboratories, Skyworks Solutions, Socionext, and Western Digital. Most, if not all, of these entities have been or are current Cadence customers.

4. Cadence provides EDA software tools to many of its customers. Those customers, in turn, may use the tools in connection with designing semiconductor products. Whether and how the customers actually use those tools, however—including what specific features of the tools the customers use—is within the customers' discretion and control.

5. Cadence provides its EDA software tools to its customers pursuant to license agreements. Many of Cadence's license agreements with its customers contain defense and/or indemnity provisions with respect to allegations of patent infringement.

6. In view of these defense and/or indemnity provisions, 12 customers have requested Cadence defend and/or indemnify them with respect to Bell's lawsuits. Another 4 customers have provide Cadence with notice of Bell's lawsuits, presumably to reserve their right to later request defense/indemnity. I understand that, while reserving its rights on the question of whether it is obligated to do so, Cadence has agreed to defend and/or indemnify 4 of its customers with respect to Bell's allegations. In addition, it is my understanding that Cadence is in discussions with a number of other customers about the possibility of defending and/or indemnifying them with respect to Bell's allegations. I further understand that these discussions have led to disputes

between Cadence and its customers regarding the scope of Cadence's defense/indemnity obligations and that these disputes are ongoing.

7. Bell's allegations of patent infringement against Cadence's customers are harming Cadence. To begin with, I understand Cadence has already incurred significant legal costs defending certain of the customers against Bell's allegations. I understand these costs will only continue to increase in magnitude as Bell's lawsuits proceed.

8. In addition, Bell's allegations have been disruptive to Cadence's business. Among other things, Cadence employees have had to contend with fielding customer's requests for defense and/or indemnity, overseeing outside legal counsel, and collecting and providing information relevant to the operation of Cadence's EDA tools.

9. I understand, moreover, that Bell will be seeking extensive discovery in the form of documents and deposition testimony directly from Cadence via subpoenas. All of these things require substantial time, which interferes with Cadence employees' ability to handle their normal, day-to-day responsibilities.

10. Bell's infringement allegations are also likely to harm Cadence's reputation and relationships with its current and prospective customers. For one thing, apart from notices of Bell's lawsuits that Cadence has received on the legal side, a number of customers have reached out on the business side. As one example, I was informed by one of our sales directors that a customer's representative raised Bell's lawsuits with him. In particular, the representative of the customer was confused as to why it was being sued when the lawsuits appear to accuse Cadence software.

11. For another thing, resolving the ongoing disputes with Cadence's customers relating to the scope of Cadence's defense and/or indemnity obligations (referenced above in paragraph 6) could strain Cadence's relationships with the customers. Such strain could have long-

lasting effects, harming Cadence's prospective future business opportunities with its customers. Relatedly, when it comes time to renew their license agreements, some customers may ask for greater protection in the form of defense and/or indemnity—that is, beyond the protection already provided in their current agreements—which could adversely impact Cadence's ability to negotiate a favorable renewal. In other words, Cadence's customers are likely to demand greater assurances from Cadence that Cadence will protect them should something similar to Bell's lawsuits happen again in the future.

12.   Finally, Bell's allegations may make prospective customers less likely to license EDA tools from Cadence lest they too be accused of infringement. And those that do become new customers are likely to seek greater protection from Cadence in the form of enhanced defense and/or indemnification obligations or other assurances than they might have otherwise.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on November 25, 2022, in Spicewood, Texas

Kam Kittrell