# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

SYNOPSYS, INC. and
CADENCE DESIGN SYSTEMS, INC.,
                         Plaintiffs,

          v.

BELL SEMICONDUCTOR, LLC,
                         Defendant.

C.A. No. 22-cv-1512-CFC


JURY TRIAL DEMANDED

## OPENING BRIEF IN SUPPORT OF BELL SEMICONDUCTOR, LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Date:  January 11, 2023

David Sochia (admitted *pro hac vice*)
dsochia@McKoolSmith.com
Ashley N. Moore (admitted *pro hac vice*)
amoore@McKoolSmith.com
Richard A. Kamprath (admitted *pro hac vice*)
rkamprath@McKoolSmith.com
MCKOOL SMITH, P.C.
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com


Kyle Ryman (admitted *pro hac vice*)
kryman@McKoolSmith.com
MCKOOL SMITH, P.C.
303 Colorado Street, Suite 2100
Austin, TX 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

*Attorneys for Defendant Bell
Semiconductor, LLC*

# TABLE OF CONTENTS

I.    Nature and Stage of the Proceedings ................................................. 1

II.   Summary of the Argument ............................................................... 1

III.  Statement of Facts .......................................................................... 3

    A.   Bell Semic's Patents have Advanced Semiconductor Design. ............ 3

    B.   Semiconductor Designers Widely Infringe Bell Semic's Patents.
          .......................................................................................... 5

    C.   Plaintiffs Now Seek a Declaration of Third-Party Non-
          Infringement and Invalidity of Bell Semic's Patents. .......................... 5

IV.   Argument ...................................................................................... 6

    A.   Plaintiffs have failed to prove subject matter jurisdiction. ................. 7

          1.   Plaintiffs have failed to show a reasonable potential for
                indemnification liability. ........................................................ 8

          2.   Plaintiffs have not alleged a controversy between
                themselves and Bell Semic. .................................................. 11

          3.   Plaintiffs' other purported grounds for jurisdiction fail. .......... 14

    B.   Even if Article III jurisdiction existed (it does not), the Court
          should still decline jurisdiction under the Act. ................................... 15

          1.   Laches bars this suit. ............................................................ 15

          2.   Continued litigation here will not be useful. ........................... 18

          3.   If Plaintiffs want to stand in the shoes of the Infringers,
                then they need to intervene in those suits—not bring a new
                one. ................................................................................... 20

V.    Conclusion ................................................................................... 21

## TABLE OF CITATIONS

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967)....................................................................................15

*Arris Grp., Inc. v. British Telecomms. PLC*,
639 F.3d 1368 (Fed. Cir. 2011) ...........................................................*passim*

*Cellco P'ship v. Broadcom Corp.*,
227 F. App'x 889 (Fed. Cir. 2007) ...................................................18

*Clinton v. Jones*,
520 U.S. 681 (1997)..................................................................................17

*Creative Compounds, LLC v. Starmark Labs.*,
651 F.3d 1303 (Fed. Cir. 2011) ...................................................7, 15

*Davis v. Federal Election Comm'n*,
554 U.S. 724 (2008)..................................................................................10

*Edmunds Holding Co. v. Autobytel Inc.*,
598 F. Supp. 2d 606 (D. Del. 2008)..........................................11, 12

*Fujitsu Ltd. v. Nanya Tech. Corp.*,
No. C 06-6613 CW, 2008 WL 3539503 (N.D. Cal. Aug. 12, 2008)..................12

*Hewlett-Packard Co. v. Acceleron LLC*,
587 F.3d 1358 (Fed. Cir. 2009) ...................................................11

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982)....................................................................................9

*Kahn v. General Motors Corp.*,
889 F.2d 1078 (Fed. Cir. 1989) ...................................................18

*Kerotest Mfg. v. C-O-Two Fire Equip. Co.*,
342 U.S. 180 (1952)..............................................................................16, 21

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)..................................................................................10

*Microchip Tech. Inc. v. Chamberlain Grp., Inc.*,
    441 F.3d 936 (Fed. Cir. 2006) ...........................................................7, 14

*Microsoft Corp. v. DataTern, Inc.*,
    755 F.3d 899 (Fed. Cir. 2014) ....................................................*passim*

*Microsoft Corp. v. WebXchange Inc.*,
    No. 09-484-JJF, 2009 WL 3534845 (D. Del. Oct. 30, 2009).....................*passim*

*Mitek Sys. v. United Servs. Auto. Ass'n*,
    34 F.4th 1344 (Fed. Cir. 2022) ...................................................*passim*

*Prasco, LLC v. Medicis Pharm. Corp.*,
    537 F.3d 1329 (Fed. Cir. 2008) ...........................................................8

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)............................................................................7

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009) ..............................................2, 13, 16

**Statutes**

28 U.S.C. § 2201 ...................................................................................2

35 U.S.C. § 299 ....................................................................................5

**Other Authorities**

19 C.F.R. § 210.28 ..............................................................................16

19 C.F.R. § 210.29 ..............................................................................16

19 C.F.R. § 210.30 ..............................................................................16

19 C.F.R. § 210.31 ..............................................................................16

AMBARELLA, INC., FORM 8-K (Dec. 1, 2022) ........................................17

Don Clark, *Chip Makers, Once in High Demand, Confront Sudden
    Challenges*, N.Y. TIMES (Oct. 27, 2022) .............................................17

FED. R. CIV. P. 13 .................................................................................21

iii

Inv. No. 337-TA-1340, 87 Fed. Reg. 68192 (Nov. 14, 2022) ................................16

Inv. No. 337-TA-1342, 87 Fed. Reg. 73330 (Nov. 29, 2022) ................................16

U.S. CONST. art. III............................................................................................1, 6, 15

## I.      Nature and Stage of the Proceedings

There is no Article III case or controversy here. Plaintiffs Synopsys, Inc. and Cadence Design Systems, Inc. ("Plaintiffs") filed a Complaint for declaratory judgment against Bell Semiconductor, LLC ("Bell Semic") that asks for an impermissible advisory opinion regarding whether a number of non-parties infringe U.S. Patent Nos. 6,436,807 ("the '807 Patent"), 7,007,259 ("the '259 Patent"), 7,149,989 ("the '989 Patent"), 7,231,626 ("the '626 Patent"), 7,260,803 ("the '803 Patent"), and 7,396,760 ("the '760 Patent") (collectively, "Patents"). (D.I. 1 ¶ (a)–(f)). Plaintiffs also ask this Court to advise on whether those Patents are valid, and grant injunctive relief. (D.I. 1 ¶ (g)–(q)). Because the Court lacks subject matter jurisdiction, Bell Semic moves to dismiss.

## II.     Summary of the Argument

This suit is a procedural gambit. Since April 2022, Bell Semic has been locking horns with semiconductor designers for their widespread infringement of Bell Semic's Patents. As the Complaint concedes, those Patents "relate to certain methods and steps for use in the design and verification of semiconductor chips." (D.I. 1 ¶ 23). But Plaintiffs do not design semiconductor chips, and have alleged no case or controversy between themselves and Bell Semic. Rather, the only cases or controversies they allege are between Bell Semic and other non-parties Bell Semic has elsewhere accused of actually infringing its Patents ("Infringers"). (*See, e.g.*,

D.I. 1 ¶ 18). Still, because Plaintiffs allegedly license electronic design automation software tools ("EDA tools") to the Infringers, and because the Infringers may have used those EDA tools when they infringed Bell Semic's Patents, Plaintiffs now inappropriately seek to tie Bell Semic's hands, allowing the Infringers to continue their unlawful infringement with impunity. (D.I. 1 ¶¶ 2, 7, 18). That is not how either Article III or the Declaratory Judgment Act ("the Act")[1] work. The Court should waste no more of its time with this suit for at least two reasons:

1. Subject matter jurisdiction is a fundamental prerequisite to sustaining any case in federal court, including those seeking declaratory relief. *Microsoft Corp. v. WebXchange Inc.*, No. 09-484-JJF, 2009 WL 3534845, at *2 (D. Del. Oct. 30, 2009). As mere suppliers of EDA tools, Plaintiffs can show subject matter jurisdiction only if they are "obligated to indemnify [the Infringers]" or a controversy separately exists with Bell Semic for Plaintiffs' *own* "liability for induced or contributory infringement based on the alleged acts of direct infringement by [their] customers." *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011). Plaintiffs cannot show either. Plaintiffs carefully avoid admitting any obligation to indemnify the Infringers. And they cannot base jurisdiction on a manufactured controversy between themselves and Bell Semic over indirect infringement either. *See Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009)

---

[1] Codified at 28 U.S.C. §§ 2201–2202.

2

(requiring specific intent to encourage infringement to show induced infringement); *Arris*, 639 F.3d at 1376 (requiring knowledge that the accused product was "especially made or especially adapted for use in an infringement" to support contributory infringement).

2. Even if Plaintiffs had established subject matter jurisdiction, this suit should still be dismissed. This Court has "unique and substantial discretion" to decline to hear claims for declaratory relief. *Mitek Sys. v. United Servs. Auto. Ass'n*, 34 F.4th 1344, 1347 (Fed. Cir. 2022) (citation omitted). There are "well-founded reasons" for this Court to decline jurisdiction over this suit. *Id.* Plaintiffs waited far too long to bring it, thus prejudicing Bell Semic, and the usefulness of any declaratory relief would be questionable at best. Plus, if Plaintiffs want to stand in the Infringers' shoes because of obligations to indemnify, then they must *stand in the Infringers' shoes* in those lawsuits—not bring a new suit here. *See Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014).

III.    **Statement of Facts**

A.    **Bell Semic's Patents have Advanced Semiconductor Design.**

Bell Semic is a successor to one of America's greatest technology incubators, Bell Labs. Bell Semic's principals all worked at Bell Labs' Allentown facility. To that end, Bell Semic owns an extensive patent portfolio of semiconductor-related technologies. Those patents were developed over decades by industry leaders, like

Bell Labs, Lucent Technologies, Agere Systems, LSI Logic, and LSI Corporation. And that portfolio includes the '259, '807, '989, '803, '626, and '760 Patents.

These Patents all generally relate to semiconductor design. For example:

- The '259 Patent teaches "[a] method and system . . . for inserting dummy metal into a circuit design, which includes a plurality of objects and clock nets." (D.I. 1 Ex. A at 2).

- The '807 Patent teaches "[a] method for making a layout for an interconnect layer of a semiconductor device to facilitate uniformity of planarization during manufacture of the semiconductor device." (D.I. 1 Ex. C at 2).

- The '989 Patent teaches "[a] method and computer program product for early physical design validation and identification of texted metal short circuits in an integrated circuit design." (D.I. 1 Ex. F at 2).

- The '803 Patent teaches "[a] method and system for performing dummy metal insertion in design data for an integrated circuit . . . wherein the design data includes dummy metal objects inserted by a dummy fill tool." (D.I. 1 Ex. B at 2).

- The '626 Patent teaches a particular "method of implementing an engineering change order" into a semiconductor design. (D.I. 1 Ex. E at 2).

- The '760 Patent teaches "a method and system of intelligent dummy filling placement to reduce inter-layer capacitance caused by overlaps of dummy filling area on successive layers." (D.I. 1 Ex. D at 2).

**B.  Semiconductor Designers Widely Infringe Bell Semic's Patents.**

Rather than leveraging Bell Semic's advances in semiconductor design through lawful means, semiconductor designers have chosen widespread, unlawful infringement. In April 2022 Bell Semic turned to the courts and International Trade Commission ("ITC") for redress. Unfortunately, the multitude of infringers, complexity and breadth of the Patents infringed, and Infringer-specific ways infringement occurs have precluded any simple solution to vindicating Bell Semic's rights. Indeed, Bell Semic cannot even join multiple Infringers to the same lawsuit because Congress has closed that door. *See* 35 U.S.C. § 299(b). So while Bell Semic is committed to conserving courts' and parties' resources, there is no perfect solution to the complicated problem the Infringers have created.

**C.  Plaintiffs Now Seek a Declaration of Third-Party Non-Infringement and Invalidity of Bell Semic's Patents.**

Bell Semic is doing everything it can to resolve its disputes with the Infringers, including pushing for settlement.[2] But now, after sitting on the sideline for seven

---

[2] Since this suit was filed, Bell Semic has reached terms that will fully resolve all claims at issue in its cases against about half the Infringers: Advanced Micro Devices, Inc.; Ampere Computing, LLC; Analog Devices, Inc.; Infineon Technologies Americas Corp.; Kioxia America, Inc.; Lattice Semiconductor Corp.;

months after the first lawsuit was filed, Plaintiffs unjustifiably seek to enter the fray and "pause" all Bell Semic's progress. (*See* D.I. 1 ¶ 18, 45). They allege, in short, that their EDA tools are "at the heart" of Bell Semic's claims against the Infringers. (D.I. 1 ¶ 12). Plaintiffs also allege that they license their EDA tools to the Infringers, that those licenses "contain defense and/or indemnity provisions relating to allegations of infringement of third-party intellectual property, including patents," and that "a multitude of customers have requested indemnity from Plaintiffs." (D.I. 1 ¶ 12–14). Thus, Plaintiffs ask this Court to declare Bell Semic's Patents non-infringed and invalid, as well as grant other injunctive relief. (D.I. 1 ¶ (a)–(q)).

## IV. Argument

Plaintiffs have no right to what they seek. They must first satisfy Article III's requirement for an actual "Case[]" or "Controvers[y]" before invoking this Court's "judicial Power." U.S. Const. art. III § 2. They cannot. But even if that were not so, well-founded reasons counsel in favor of discretionarily dismissing Plaintiffs' misdirected Complaint all the same.

---

MACOM Technology Solutions Inc.; Marvell Semiconductor, Inc.; Micron Technology, Inc.; NVIDIA Corporation; Qualcomm Incorporated; Qualcomm Technologies, Inc.; Rockchip Electronics Co., Ltd.; Silicon Laboratories Inc.; and Western Digital Technologies, Inc. Bell Semiconductor still has claims pending against: Ambarella, Inc.; ams-OSRAM AG; AMS OSRAM Automotive Lighting Systems USA Inc.; ASMEDIA Technology, Inc.; Maxlinear, Inc.; NXP USA, Inc.; Omnivision Technologies, Inc.; Phison Electronics, Inc.; Sequans Communications, S.A.; Sequans Communications, Inc.; Skyworks Solutions Inc.; and Socionext America, Inc.

### A.      Plaintiffs have failed to prove subject matter jurisdiction.

Plaintiffs invite this Court to exceed the bounds of its judicial power. There is simply nothing for this Court to decide without an "actual case[] or controvers[y]" before it. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (citation and internal quotation marks omitted). Plaintiffs bear the burden to prove one exists. *WebXchange*, 2009 WL 3534845, at *2–3. What Plaintiffs seek, though, is to invalidate and disprove infringement of Bell Semic's Patents. (D.I. 1 ¶ 16–17). Federal Circuit case law governs whether Plaintiffs may. *Microchip Tech. Inc. v. Chamberlain Grp., Inc.*, 441 F.3d 936, 940 (Fed. Cir. 2006). And under that case law, Plaintiffs have no "right to bring [a] declaratory judgment action solely because their customers have been sued for direct infringement." *Microsoft*, 755 F.3d at 904. Such suits, like this one, are at cross-purposes with the Act, which "provide[s] the *allegedly infringing party* relief from uncertainty and delay regarding its legal rights." *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1316 (Fed. Cir. 2011) (emphasis added). As mere "supplier[s]" of EDA tools, a case or controversy exists here only if: (1) Plaintiffs are "obligated to indemnify [their] customers from infringement liability"; or (2) a separate "controversy" exists between Bell Semic and Plaintiffs for their own "liability for induced or contributory infringement based on the alleged acts of direct infringement by [their] customers." *Arris*, 639 F.3d at 1375. Plaintiffs failed to show either or any other basis applies.

1. **Plaintiffs have failed to show a reasonable potential for indemnification liability.**

Speculative assertions of an obligation to indemnify do not establish subject matter jurisdiction. Instead, Plaintiffs needed to show a "reasonable potential" for indemnification liability. *Mitek*, 34 F.4th at 1346. Only then would Plaintiffs possess "the required concrete stake in litigating the underlying customers' freedom from infringement liability." *Id.* Only then could Plaintiffs "stand in the shoes of [their] customers." *Microsoft*, 755 F.3d at 904. Plaintiffs' Complaint fails that test for four reasons.

*First*, the Complaint's bare allegations of defense and indemnity agreements are not enough. The Complaint alleges that the license agreements' purported "defense and/or indemnity provisions relat[e] to allegations of infringement of third-party intellectual property, including patents." (D.I. 1 ¶ 14). That will not do. Such allegations omit the "precise scope of the corresponding indemnity agreements," and their precise scope is needed for the Court to evaluate whether a reasonable potential exists that Plaintiffs must defend or indemnify the Infringers. *Mitek*, 34 F.4th at 1346. In other words, Plaintiffs have left the Court to speculate on their actual defense and indemnity obligations, and speculation is not enough to establish subject matter jurisdiction. *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) ("[A] case or controversy must be based on a *real* and *immediate* injury or threat of future injury that is *caused by the defendants*—an objective

8

standard that cannot be met by a purely subjective or speculative fear of future harm.").

*Second*, the Complaint's nebulous allegations of demands for defense or indemnity do not support subject matter jurisdiction either. Plaintiffs allege that "a multitude" of Infringers "have requested indemnity." (D.I. 1 ¶ 14). But the number of indemnity requests Plaintiffs have received does not matter—only their "merit." *See Mitek*, 34 F.4th at 1346. Indeed, basing subject matter jurisdiction on meritless indemnity requests or a Plaintiff's agreement to provide indemnity would be tantamount to allowing subject matter jurisdiction to turn on "the action" or "consent of the parties," which is not the law. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). And, Plaintiffs have not identified which third parties have defense or indemnity rights—much less which third parties have exercised such a right. Without giving the Court anything to evaluate the merit of the Infringers' requests for defense or indemnity, Plaintiffs cannot show subject matter jurisdiction on that basis.

*Third*, Plaintiffs have pleaded themselves out of Court by actively undermining their purported indemnity obligations. Plaintiffs admit in their motion for preliminary injunction to actively "disput[ing]" with the Infringers "the scope of defense and/or indemnity obligations" under the license agreements. (D.I. 9 at 19). And each Plaintiff has sworn it is reserving its rights on its defense and indemnity

obligations. (D.I. 11 ¶ 4 (for Synopsys); D.I. 12 ¶ 6 (for Cadence)). Without a doubt, Plaintiffs' own admissions make any inference that they have an actual obligation to indemnify unreasonable. *See Mitek*, 34 F.4th at 1346 (explaining that while a party need not concede an obligation to indemnify, the merit of the request is relevant).

*Fourth*, Plaintiffs must show subject matter jurisdiction *individually*, and they have not. Subject matter jurisdiction does not exist without standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). And "[s]tanding is not dispensed in gross." *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008) (citation omitted). Each Plaintiff must individually demonstrate standing for each claim brought. *See id.* Plaintiffs ignore this principle, alleging Infringers "are customers of *one or both* of the Plaintiffs," (D.I. 1 ¶ 7) (emphasis added); that the Infringers "have entered into license agreements with Plaintiffs," (D.I. 1 ¶ 14); and that those license agreements "contain defense and/or indemnity provisions," (D.I. 1 ¶ 14). The Court can only speculate from such allegations which Plaintiff (if either) can establish standing to bring which claim (if any) based on its relationship with which Infringer (if any). Speculation is not enough to establish standing. *Lujan*, 504 at 561. Thus, Plaintiffs have failed to show they have standing here.

At bottom, Plaintiffs hand-wave their burden to show subject matter jurisdiction. Nothing supports a reasonable potential that each Plaintiff has an

obligation to indemnify any particular Infringer. Thus, this Court should not find subject matter jurisdiction on this basis.

### 2. Plaintiffs have not alleged a controversy between themselves and Bell Semic.

Because Plaintiffs cannot step into the shoes of the Infringers, they must show an actual case or controversy between Bell Semic and themselves based on their *own* infringement. *See Arris*, 639 F.3d at 1375. Plaintiffs do not. Plaintiffs point to no statement, allegation, or filing where Bell Semic accuses them of infringing Bell Semic's Patents. Plaintiffs cannot show Bell Semic has manifested an intent to assert the Patents against them. Yet again, Plaintiffs failed to show subject matter jurisdiction.

To establish subject matter jurisdiction, declaratory judgment plaintiffs must show that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Mitek*, 34 F.4th at 1340. That is why suppliers bringing declaratory judgment claims generally allege that a patent owner has acted "overtly and specifically toward[s]" them, "manifest[ing] its intent to enforce its rights against" the supplier. *See Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp. 2d 606, 609–10 (D. Del. 2008); *see also*, *e.g.*, *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1364 (Fed. Cir. 2009)

11

(highlighting the patent owner's "affirmative step of twice contacting [the plaintiff] directly, making an implied assertion of its rights"). Yet Plaintiffs have not.

Plaintiffs cannot show Bell Semic manifested an intent to assert the Patents against them. The Complaint alleges that Bell Semic "served subpoenas on Plaintiffs" for fact discovery relating to the ITC's investigation of the '626 Patent. (D.I. 1 ¶ 83). But serving subpoenas does not manifest an intent to assert patents. In *Mitek Systems, Inc. v. United Services Automobile Association*, for example, the patent owner served a third-party subpoena on the supplier during fact discovery in another case. 34 F.4th at 1338. The Federal Circuit gave that no weight in its subject matter jurisdiction analysis when the supplier eventually sued the patent owner for declaratory judgment. *Cf. id.* at 1342–44.

Plaintiffs also complain that Bell Semic has refused to let widespread, unlawful infringement go unanswered. (*E.g.*, D.I. 1 ¶ 1). But suits against one class of defendants (like the Infringers) are not overt, specific acts towards others (like Plaintiffs). *Edmunds*, 598 F. Supp. 2d at 610. The lack of any overt acts targeting Plaintiffs represents yet another "significant" jurisdictional hurdle. *Id.*

Plaintiffs only hope to overcome that hurdle is showing Bell Semic's allegations against the Infringers "would compel the conclusion that [Plaintiffs] ha[ve] also infringed." *See Fujitsu Ltd. v. Nanya Tech. Corp.*, No. C 06-6613 CW, 2008 WL 3539503, at *3 (N.D. Cal. Aug. 12, 2008). Doing that requires Plaintiffs

to show that Bell Semic's "charges of infringement" against the Infringers also impliedly assert "each element required for" showing Plaintiffs' own induced or contributory infringement. *Microsoft*, 755 F.3d at 903–04; *Arris*, 639 F.3d at 1376. Plaintiffs made no such showing.

Induced infringement requires showing that Plaintiffs "knew of [the Patents], knowingly induced the infringing acts, and possessed a specific intent to encourage [the Infringer's] infringement." *Vita-Mix*, 581 F.3d at 1328; *Microsoft*, 755 F.3d at 904–05. Plaintiffs point to no allegations by Bell Semic touching on whether they encouraged anyone's infringement at all, let alone the Infringers'. And specific intent to encourage infringement cannot exist if the supplier reasonably believes its product can be used in a non-infringing manner. *See Vita-Mix*, 581 F.3d at 1328–29. Plaintiffs cannot point to any allegations by Bell Semic that Plaintiffs' EDA tools have no non-infringing uses. Nor is the Complaint consistent with such allegations. It broadly alleges that Plaintiffs' EDA tools are used "to design, develop and test semiconductor chips," (D.I. 1 ¶ 2), but then minimizes the Patents as merely relating to "a small part of the integrated circuit design process," (D.I. 1 ¶ 24). Therefore, Plaintiffs lack the allegations required to support subject matter jurisdiction based on induced infringement.

Plaintiffs cannot base subject matter jurisdiction on contributory infringement either. That would require showing that Plaintiffs knew their EDA tools were

13

"especially made or especially adapted for use in an infringement" of the Patents, and that their EDA tools are "not a staple article or commodity of commerce suitable for substantial noninfringing use." *Arris*, 639 F.3d at 1376 (citation omitted). Plaintiffs cannot point to any allegations by Bell Semic seeking to prove either. So Plaintiffs cannot now claim subject matter jurisdiction based on contributory infringement.

*       *       *

In sum, Plaintiffs again fail to establish subject matter jurisdiction. They cannot point to any overt acts supporting an intent by Bell Semic to assert the Patents specifically against them. And they cannot show Bell Semic's allegations against the Infringers necessarily show indirect infringement by Plaintiffs. Therefore, Plaintiffs cannot rely on these bases to show subject matter jurisdiction here.

### 3.    Plaintiffs' other purported grounds for jurisdiction fail.

With no legal basis for jurisdiction, Plaintiffs appear to rely on an economic one. Plaintiffs complain that Bell Semic is "burdening" them because the Infringers have used "[Plaintiffs'] technology." (D.I. 1 ¶ 12). But the Federal Circuit has repeatedly held that economic injury does not "confer standing in patent cases seeking a declaratory judgment." *Arris*, 639 F.3d at 1373–75; *see also Microchip*, 441 F.3d at 943 (explaining that an "adverse economic interest" does not "confer declaratory judgment jurisdiction"). In particular, the Federal Circuit has confirmed

14

that "an economic interest in clarifying [a] customer's rights under [another party's] patents . . . cannot form the basis of an 'actual controversy' under the Declaratory Judgment Act." *Creative Compounds*, 651 F.3d at 1316.

Plaintiffs also appear to suggest that judicial *efficiency* might provide grounds for jurisdiction. (*See* D.I. 1 ¶ 15). Yet again, the Federal Circuit has already rejected that proposition: efficiency considerations "do[] not create . . . jurisdiction when none exists." *Microsoft*, 755 F.3d at 907.

**B.   Even if Article III jurisdiction existed (it does not), the Court should still decline jurisdiction under the Act.**

Even if Plaintiffs had shown subject matter jurisdiction, this Court still has the "unique and substantial discretion" to decline to hear their misdirected claims. *Mitek*, 34 F.4th at 1347 (citation omitted). That is because "facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within [the Court's] grasp." *Id.* (citation omitted). With those facts laid bare, there are "well-founded reasons" for this Court to decline jurisdiction over this suit. *Id.*

**1.   Laches bars this suit.**

Plaintiffs slept on their rights for too long. Declaratory relief is equitable, meaning parties who sleep on their rights may lose them to laches. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). Here, Plaintiffs delayed filing this suit "for an

unreasonable and inexcusable amount of time," thus prejudicing Bell Semic and barring this suit in the process. *See Vita-Mix*, 581 F.3d at 1333.

Plaintiffs readily concede dragging their feet. The Complaint notes that Bell Semic first filed suit against the Infringers nearly *seven months* before Plaintiffs filed their Complaint. (*See* D.I. 1 ¶ 45). Plaintiffs have also separately conceded watching Bell Semic from the sidelines for months before suing. (D.I. 18 at 8 n.2). Such delay is unreasonable and inexcusable. Plaintiffs should have intervened when Bell Semic started vindicating its rights—not months later once suits had multiplied and after Bell Semic had invested considerable sums seeking redress. *Kerotest Mfg. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 186 (1952).

Plaintiffs delay in bringing this suit will now cause Bell Semic prejudice if the Court exercises jurisdiction over it. Bell Semic has made significant headway against the Infringers. Discovery has been ongoing for months in the ITC.[3] And many

---

[3] Discovery begins in the ITC "[f]ollowing publication in the Federal Register of a Commission notice instituting the investigation." 19 C.F.R. § 210.28(a) (for depositions); *see also id.* § 210.29(b)(1) (same for interrogatories); *id.* § 210.30(b)(1) (same for requests for production); *id.* § 210.31(a) (same for requests for admission). The ITC published its notice instituting its investigation relating to the '626 and '803 Patents on November 14, 2022. Inv. No. 337-TA-1340, 87 Fed. Reg. 68192 (Nov. 14, 2022). The ITC did the same for its investigation relating to the '760 Patent on November 29, 2022. Inv. No. 337-TA-1342, 87 Fed. Reg. 73330 (Nov. 29, 2022).

Infringers in district court have fully briefed dispositive motions.[4] All of that progress has come at *substantial* expense to Bell Semic.

Yet Plaintiffs unjustifiably want to restart the clock in favor of this suit. (D.I. 1 ¶ 18–19). But each passing month "increas[es] the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts." *Clinton v. Jones*, 520 U.S. 681, 707 (1997). Further, recent fears of an economic downturn "have clobbered" the semiconductor-design industry this year, which is "evident in recent earnings announcements from chip makers." Don Clark, *Chip Makers, Once in High Demand, Confront Sudden Challenges*, N.Y. TIMES (Oct. 27, 2022), https://www.nytimes.com/2022/10/27/technology/chip-makers-challenges.html. There is a substantial risk at least some Infringers will go bankrupt before Bell Semic can vindicate its rights against them.[5] *Clinton*, 520 U.S. at 707 (noting that risk of death to a party is prejudicial). For at least those reasons, any further delay will only prejudice Bell Semic.

---

[4] *See, e.g.*, *Bell Semiconductor, LLC v. MaxLinear, Inc.*, No. 3:22-cv-01178-BAS-KSC (S.D. Cal. Dec. 5, 2022) (D.I. 17) (showing MaxLinear's reply brief for its motion to dismiss as filed) (attached as Exhibit A); *Bell Semiconductor, LLC v. Omnivision Technologies, Inc.*, No. 8:22-cv-01512-JAK-MRW (C.D. Cal. Dec. 5, 2022) (D.I. 47) (same for Omnivision) (attached as Exhibit B).

[5] For example, Ambarella, Inc. reported a $19.8 million quarterly loss in a recent filing with the Securities and Exchange Commission. *See* AMBARELLA, INC., FORM 8-K Ex. 99.1 (Dec. 1, 2022), https://www.sec.gov/Archives/edgar/data/1280263/000119312522296541/d297362 dex991.htm.

## 2.     Continued litigation here will not be useful.

Laches gives the Court a well-founded reason for declining jurisdiction over this suit. So, too, does the reality that this suit lacks "usefulness," which weighs heavily against it proceeding further. *Mitek*, 34 F.4th at 1347 (citation omitted).

Plaintiffs' stated goal is to duplicate ongoing litigation in other district courts and the ITC. (D.I. 1 ¶ 15–18). The Federal Circuit has approved discretionary dismissal of such suits. Like here, in *Cellco Partnership v. Broadcom Corp.* a supplier brought a declaratory judgment suit against a patent owner "rais[ing] many of the same issues" already being litigated in the ITC against an infringing party, "including the validity of the patents." 227 F. App'x 889, 890 (Fed. Cir. 2007). Like here, the patent owner had also sued the infringing party in district court. *Id.* And, like here, the supplier had failed to intervene in district court. *See id.* The Federal Circuit affirmed dismissal of the supplier's declaratory judgment action on discretionary grounds. *Id.* It explained that the patent owner's district court action would "benefit [from] the ITC's determinations, and [the supplier could] seek to intervene" there. *Id.* Like here, in other words, well-founded reasons existed to stop the suit in *Cellco* from continuing.

Indeed, it is not even clear that this suit will actually resolve anything in the Infringer suits. Plaintiffs do not allege that any Infringer has agreed to be bound by the results of this suit. *See Kahn v. General Motors Corp.*, 889 F.2d 1078, 1082 (Fed.

Cir. 1989) (explaining the importance of such an agreement before staying a suit against a manufacturer's customer). So when Bell Semic prevails, this suit will have accomplished nothing but wasting the Court's and parties' resources.

The same would be true were the Court to grant Plaintiffs what they seek. Bell Semic has never alleged that Plaintiffs' EDA tools necessarily infringe Bell Semic's Patents. Therefore, any "declaration that [Plaintiffs' EDA tools] do not infringe the patents-in-suit will not prevent [Bell Semic] from suing other [Infringers] for infringement based on their use of [Plaintiffs' EDA tools]." *WebXchange*, 2009 WL 3534845, at *4.

Plaintiffs may try to argue that a declaration of invalidity of Bell Semic's patents would be useful in the Infringer suits. But that would put the cart before the horse. A case or controversy must first exist before a suit can be evaluated for its usefulness. *See Mitek*, 34 F.4th at 1340. And there is no case or controversy here without allegations of patent infringement. *See supra* Part IV(A). Therefore, Plaintiffs' must show "the usefulness of the declaratory judgment remedy" in resolving Bell Semic's allegations of patent *infringement* before they can claim the suit will also be useful in testing the validity of Bell Semic's Patents. *See Mitek*, 34 F.4th at 1347 (citation omitted). Deciding otherwise would allow manufacturers to use the Act to invalidate method claims at will, without regard for whether the product itself or the customer infringed. It would mean here, for example, that a suit

for declaratory relief by the keyboard, mouse, and computer manufacturers the Infringers used to infringe Bell Semic's Patents would be useful in resolving Bell Semic's claims against the Infringers. That cannot be the law, and it is Plaintiffs' burden to show otherwise, *see WebXchange*, 2009 WL 3534845, at *3 (explaining plaintiffs bear the burden on showing jurisdiction).

### 3.   If Plaintiffs want to stand in the shoes of the Infringers, then they need to intervene in those suits—not bring a new one.

Finally, the Federal Circuit has already rejected that Plaintiffs have a "right to bring [a] declaratory judgment action solely because their customers have been sued for direct infringement." *Microsoft*, 755 F.3d at 904. Even if Plaintiffs could show an obligation to indemnify, that would only mean they may "stand in the shoes of the[ir] customers." *Id.* Because suits against the Infringers are already underway, standing in the Infringers' shoes means Plaintiffs must participate in *those* suits. *Id.* "[Plaintiffs] cannot seek a declaration from a [Delaware] court on behalf of customers they must indemnify where a suit against these very same customers on all the same issues [is] *already* underway in [other] court[s]." *Id.* This provides yet another well-founded reason to dismiss Plaintiffs' misdirected Complaint.

Those principles make particularly good sense here. Plaintiffs want to have their cake and eat it too. They claim standing based on indemnity agreements, but simultaneously dispute whether an obligation to indemnify actually exists. (D.I. 9 at 19; D.I. 11 ¶ 4; D.I. 12 ¶ 6). Better to make Plaintiffs intervene in the Infringer suits

so indemnity can be raised on cross claim, *see* FED. R. CIV. P. 13(g), rather than leaving it unresolved here, thus sowing the seeds for future litigation between Plaintiffs and the Infringers.

*   *   *

In sum, Plaintiffs had "an equal start in the race to the courthouse, not a headstart." *Kerotest*, 342 U.S. at 185. Laches bars this suit, any further litigation will be of dubious usefulness, and standing in the Infringers' shoes means Plaintiffs should intervene—not bring a new action. For any of those well-founded reasons, even if Plaintiffs could demonstrate subject matter jurisdiction here, this Court should discretionarily decline to hear their misdirected Complaint.

## V.    Conclusion

For those reasons, Bell Semic asks the Court to dismiss Plaintiffs' Complaint.

Dated: January 11, 2023.                     Respectfully submitted,

                                             FARNAN LLP

                                             /s/ Brian E. Farnan
                                             Brian E. Farnan (#4089)
                                             Michael J. Farnan (#5165)
                                             919 N. Market St., 12th Floor
                                             Wilmington, DE 19801
                                             (302) 777-0300
                                             bfarnan@farnanlaw.com
                                             mfarnan@farnanlaw.com

                                             David Sochia (admitted *pro hac vice*)
                                             dsochia@McKoolSmith.com
                                             Ashley N. Moore (admitted *pro hac vice*)
                                             amoore@McKoolSmith.com
                                             Richard A. Kamprath (admitted *pro hac
                                             vice*)
                                             rkamprath@McKoolSmith.com
                                             MCKOOL SMITH, P.C.
                                             300 Crescent Court Suite 1500
                                             Dallas, TX 75201
                                             Telephone: (214) 978-4000
                                             Telecopier: (214) 978-4044

                                             Kyle Ryman (admitted *pro hac vice*)
                                             kryman@McKoolSmith.com
                                             MCKOOL SMITH, P.C.
                                             303 Colorado Street, Suite 2100
                                             Austin, TX 78701
                                             Telephone: (512) 692-8700
                                             Telecopier: (512) 692-8744

                                             *Attorneys for Defendant Bell
                                             Semiconductor, LLC*

## <u>CERTIFICATION OF COMPLIANCE</u>

The undersigned certifies that Bell Semiconductor, LLC's Opening Brief in Support of Bell Semiconductor, LLC's Motion to Dismiss Plaintiffs' Complaint is in Times New Roman 14-point font and contains 4,893 words, exclusive of caption, tables, and signature block, counted using Microsoft Word's word count feature.


/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)

Dated: January 11, 2023