# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

SYNOPSYS, INC. and                              )
CADENCE DESIGN SYSTEMS, INC.,                   )
                                                )    C.A. No. 22-1512-CFC
                    Plaintiffs,                 )
                                                )    DEMAND FOR JURY TRIAL
        v.                                      )
                                                )
BELL SEMICONDUCTOR, LLC,                        )
                                                )
                    Defendant.                  )
                                                )

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS COMPLAINT

Dated: January 25, 2023

OF COUNSEL:

Krista S. Schwartz
Barrington Dyer
WILLKIE FARR & GALLAGHER LLP
One Front Street
San Francisco, CA 94111
(415) 858-7400
kschwartz@willkie.com
bdyer@willkie.com

Shaimaa Hussein
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
shussein@willkie.com

Aliza George Carrano

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
pkraman@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

*Attorneys for Synopsys, Inc. and
Cadence Design Systems, Inc.*

WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006
(202) 303-1000
acarrano@willkie.com

*Attorneys for Synopsys, Inc.*

Jeffrey A. Miller
Joseph Palmieri
ARNOLD & PORTER KAYE
SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306
(650) 319-4538
jeffrey.miller@arnoldporter.com
joseph.palmieri@arnoldporter.com

Matthew M. Wolf
Jennifer Sklenar
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
(202) 942-5786
matthew.wolf@arnoldporter.com
jennifer.sklenar@arnoldporter.com

Kurt Riester
Lindsay Strong
ARNOLD & PORTER KAYE
SCHOLER LLP
70 West Madison Avenue, Suite 4200
Chicago, IL 60602
(312) 583-2300
kurt.riester@arnoldporter.com
lindsay.strong@arnoldporter.com

*Attorneys for Cadence Design Systems, Inc.*

# **TABLE OF CONTENTS**

I.    NATURE OF CASE AND STAGE OF PROCEEDINGS ...........................1

II.    SUMMARY OF ARGUMENT....................................................................1

III.   STATEMENT OF FACTS .........................................................................2

IV.   ARGUMENT...............................................................................................4

        A.    Legal Standard......................................................................4

        B.    This Court Has Jurisdiction Over Plaintiffs' Case...............................5

                1.    Plaintiffs' allegations establish reasonable potential for indemnity obligations.................................................6

                2.    Controversy exists as to indirect infringement .......................10

                3.    Controversy exists as to direct infringement ...........................16

        C.    The Court Should Not Decline Jurisdiction......................................18

        D.    If Necessary, Plaintiffs Should Be Granted Leave to Amend ............22

V.    CONCLUSION .........................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allergan, Inc. v. Revance Therapeutics, Inc.*,
No. 21-1411-RGA, 2022 WL 2866723 (D. Del. July 21, 2022) .........................5

*Applied Materials Inc. v. Cohen*,
No. 17-CV-04990-EMC, 2018 WL 1400378 (N.D. Cal. Mar. 20,
2018) .................................................................................................. 14, 18

*Applied Materials, Inc. v. Demaray LLC*,
No. 5:20-CV-09341-EJD, 2021 WL 4222177 (N.D. Cal. Sept. 16,
2021) ......................................................................... 15, 16, 17, 18

*Arris Grp., Inc. v. Brit. Telecomms. PLC*,
639 F.3d 1368 (Fed. Cir. 2011) ...................................... 2, 11, 14, 15

*Blonder-Tongue Lab'ys., Inc. v. Univ. of Illinois Found.*,
402 U.S. 313 (1971) ..............................................................................20

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ...........................................................3

*Citrix Sys., Inc. v. Parallel Networks Licensing, LLC*,
No. 19-2005-LPS, 2020 WL 2309073 (D. Del. May 8, 2020) .........................13

*Const. Party of Penn. v. Aichele*,
757 F.3d 347 (3d Cir. 2014) ..................................................2, 4, 5

*Edmunds Holding Co. v. Autobytel Inc.*,
598 F. Supp. 2d 606 (D. Del. 2009) ...............................................13

*FedEx Corp. Servs., Inc. v. Eclipse IP LLC*,
15 F. Supp. 3d 1346 (N.D. Ga. 2013) ...........................................7, 8

*Hewlett-Packard Co. v. Acceleron LLC*,
587 F.3d 1358 (Fed. Cir. 2009) ................................................ 14, 18

*Ibiquity Digit. Corp. v. Delaware Radio Techs.*,
LLC, No. 14-853-GMS, 2015 WL 13885030 (D. Del. Jan. 7, 2015) ..............6, 9

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ....................................................................2, 21

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007).......................................................................... 1, 6, 14

*Microsoft Corp. v. DataTern, Inc.*,
    755 F.3d 899 (Fed. Cir. 2014)......................................................*passim*

*Microsoft Corp. v. GeoTag, Inc.*,
    No. 11-175-RGA, 2014 WL 4312167 (D. Del. Aug. 29, 2014)..................16, 18

*Microsoft Corp. v. SynKloud Techs., LLC*,
    484 F. Supp. 3d 171 (D. Del. 2020) ..................................................................7

*Microsoft Corp. v. WebXchange Inc.*,
    No. CA 09-484-JJF, 2009 WL 3534845 (D. Del. Oct. 30, 2009)................15, 21

*Mitek Sys., Inc. v. United Servs. Auto. Ass'n*,
    34 F.4th 1334 (Fed. Cir. 2022)......................................................*passim*

*In re Mobile Telecomms. Techs., LLC*,
    247 F. Supp. 3d 456 (D. Del. 2017) .......................................................2, 6, 18

*Schuchardt v. President of the United States*,
    839 F.3d 336 (3d Cir. 2016)................................................................5

*SpeedTrack, Inc. v. Off. Depot, Inc.*,
    791 F.3d 1317 (Fed. Cir. 2015)..................................................................21

*Vitaworks IP, LLC v. Glanbia Nutritionals (NA), Inc.*,
    No. 19-2259-CFC, 2021 WL 5061707 (D. Del. Oct. 26, 2021).......................22

*Wheeler v. Wheeler*,
    639 F. App'x 147 (3d Cir. 2016)........................................................................3

**Statutes**

28 U.S.C. § 2201..........................................................................................................6

35 U.S.C. § 271 .................................................................................2, 11, 18

**Other Authorities**

Fed. R. Civ. P. 15(a) ............................................................................................22

## I.      NATURE OF CASE AND STAGE OF PROCEEDINGS

Plaintiffs filed this declaratory judgment ("DJ") action against Defendant ("BSLLC") in response to BSLLC's nationwide litigation campaign against Plaintiffs' customers.

BSLLC's claims against Plaintiffs' customers are based on the use of Plaintiffs' products.  BSLLC's claims have caused Plaintiffs' customers to demand indemnity and created a reasonable apprehension BSLLC could sue Plaintiffs for infringement.  D.I. 1 ("Compl.") ¶14.  Plaintiffs thus ask this Court for relief—declarations of non-infringement and invalidity.  *Id.* ¶¶62-63.

BSLLC now moves to dismiss for lack of subject matter jurisdiction ("SMJ"). As explained below, the Court has jurisdiction.

## II.     SUMMARY OF ARGUMENT

1.      This Court has jurisdiction over this action.  Arguing a rigid standard governs the case-and-controversy inquiry, BSLLC overlooks the seminal case, *MedImmune v. Genentech*, where the Supreme Court eschewed a rigid inquiry in assessing DJ jurisdiction in favor of an "all the circumstances" approach.  549 U.S. 118, 127 (2007).

2.      Multiple grounds establish SMJ, including (1) indemnity obligations, (2) controversy as to Plaintiffs' indirect infringement based on their customers' alleged direct infringement, and (3) controversy as to Plaintiffs' direct infringement

1

based on BSLLC's allegations against the customers. *Arris Grp., Inc. v. Brit. Telecomms. PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011); *In re Mobile Telecomms. Techs., LLC*, 247 F. Supp. 3d 456, 461-62 (D. Del. 2017).

3. Because BSLLC mounts a "facial" attack on SMJ, the Court "consider[s] the allegations of the complaint and documents referenced therein and attached thereto[] in the light most favorable to the plaintiff[s]." *Const. Party of Penn. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Under this standard, Plaintiffs' allegations establish SMJ under each basis enumerated above.

4. BSLLC's request for discretionary denial should be rejected. BSLLC's "laches" argument fails. Plaintiffs did not delay; they filed suit soon after BSLLC accelerated its litigation campaign. And forcing Plaintiffs to intervene in dozens of customer suits would be far less efficient than proceeding here, where the parties with the greatest knowledge and stake in the dispute can litigate it. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).

## III.  STATEMENT OF FACTS

Starting in April 2022, BSLLC filed over 80 district court actions and three ITC investigations alleging Plaintiffs' customers infringe patents by using Plaintiffs' EDA software tools. Compl. ¶¶10-12. BSLLC relies solely on customers' use of Plaintiffs' tools to plead infringement under 35 U.S.C. §271. *Id.* ¶¶10, 59, 65, 71, 77. BSLLC accuses Cadence's Pegasus, Innovus and Virtuoso tools, and Synopsys'

IC Compiler and IC Validator tools (collectively, "Accused Tools"), as reflected in claim charts attached to customer complaints.[1]  BSLLC does not allege customers modify the Accused Tools to infringe.  *See id.* ¶13.  Nor does BSLLC allege the Accused Tools must be combined with other technology to infringe.  *Id.*  BSLLC, through experts, contends the Accused Tools are specifically designed to follow industry "standard practice[s]" such that use thereof makes infringement "highly likely" and noninfringement "highly unlikely."  Dyer Decl., Ex. 25 ¶¶23, 68, 77; Ex. 26 ¶¶26, 81, 83; Ex. 27 ¶¶35, 70, 74, 76; Ex. 17 ¶¶80, 85; Ex. 21 ¶83.

Plaintiffs license their tools to customers via agreements with indemnity provisions.  Compl. ¶14.  And customers have requested indemnity from Plaintiffs. *Id.*  Plaintiffs, in turn, agreed to defend and/or indemnify customers in connection with BSLLC'S allegations, including at least NXP USA, Inc. ("NXP") and

---

[1] Compl. ¶6; Dyer Decl., Ex. 13 at 3, 7, 16; Ex. 14 at 9, 13, 15; Ex. 15 at 12, 18, 20; Ex. 16 at 3; Ex. 17 ¶74; Ex. 18 at 12, 23; Ex. 19, *passim*; Ex. 14, *passim*; Ex. 16, *passim*; Ex. 20, *passim*; Ex. 21 ¶¶83, 86; Ex. 15, *passim* (collectively accusing Cadence tools); Ex. 19, *passim*; Ex. 2 at , 12, 17; Ex. 23 at 4; Ex. 10 at 2; Ex. 9 at 1; Ex. 12, *passim*; Ex. 8 at 1 n.1; Ex. 20 at 4, 6, 7 (collectively accusing Synopsys tools).  These are integral pleadings from proceedings referenced in the Complaint also subject to judicial notice.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("document integral to or explicitly relied upon in the complaint may be considered without converting the motion into one for summary judgment"); *Wheeler v. Wheeler*, 639 F. App'x 147, 151 n.10 (3d Cir. 2016) (Court "may take judicial notice of public records, including records of judicial proceedings").

Socionext America, Inc. ("Socionext"), which are each customers of both Cadence and Synopsys.  *Id.* ¶7; Dyer Decl., Ex. 1 at 2; Ex. 2 at 1; Ex. 3 at 7.

BSLLC is seeking discovery from Plaintiffs in the customer cases.  In the ITC, for instance, BSLLC served subpoenas on Plaintiffs seeking documents, testimony, and source code relating to the Accused Tools.  Compl. ¶83; Dyer Decl., Exs. 28, 29; Miller Decl., Exs. 31, 32.

Plaintiffs filed their complaint on November 18, 2022, shortly after BSLLC's litigation campaign accelerated.  Compl. ¶12, Ex. M.  Plaintiffs also filed a motion for Preliminary Injunction on November 28 to enjoin BSLLC from proceeding with the customer cases.  D.I. 8.

Although BSLLC allegedly "reached terms" with certain customers, no customer cases have been dismissed.  Even if settlements are consummated, 35 district court cases and two ITC actions involving ten customers will remain.  *Compare* D.I. 33 ("Mot.") at 6, n.2 *with* Compl. ¶7.

## IV.   ARGUMENT

### A.   Legal Standard

There are two types of subject matter jurisdiction challenges: "facial" and "factual."  *Aichele*, 757 F.3d at 357.  A "facial attack contests the sufficiency of the pleadings, whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites."  *Id*. at 358 (cleaned up).

4

BSLLC fails to state which type of challenge it makes, but its Motion does not contradict the Complaint's allegations.  BSLLC instead contends the Complaint does not allege sufficient jurisdictional facts.  *E.g.*, Mot. 1 (Plaintiffs "alleged no case or controversy").  This suggests a facial attack.  *Allergan, Inc. v. Revance Therapeutics, Inc.*, No. 21-1411-RGA, 2022 WL 2866723, at *3 (D. Del. July 21, 2022); *Aichele*, 757 F.3d at 358-59.

Plaintiffs, therefore, are "entitled to the more generous standard of review associated with" a facial attack.  *Aichele*, 757 F.3d at 359.  The Court "consider[s] the allegations of the complaint and documents referenced therein and attached thereto[] in the light most favorable to the plaintiff."  *Id*. at 358.  The Court should not "weigh and 'consider evidence outside the pleadings'" or "foray into fact-finding."  *Id*. at 358, 359.

The Complaint's allegations, taken as true and construed in favor of Plaintiffs, establish this Court has SMJ over the parties' dispute.[2]

## B.    This Court Has Jurisdiction Over Plaintiffs' Case

The DJ Act allows courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be

---

[2] The Court should not entertain any belated effort to dispute jurisdictional facts for the first time on reply.  If it does, it "must permit [Plaintiffs] to respond with evidence supporting jurisdiction."  *Schuchardt v. President of the United States*, 839 F.3d 336, 343 (3d Cir. 2016).

sought." 28 U.S.C. §2201. The Supreme Court rejected rigid application of this test, explaining "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (cleaned up).

Where, as here, a patentee sues a supplier's customers, alleging infringement based on use of the supplier's technology, the supplier can establish jurisdiction in several ways: (1) defense or indemnity obligations, and (2) justiciable controversy as to the supplier's liability for ***indirect*** infringement based on the customer's alleged direct infringement. Mot. 7 (citing *Arris*, 639 F.3d at 1375). But these are not "prerequisites for ... jurisdiction in such situations." *Mobile Telecomms.*, 247 F. Supp. at 461. A supplier can also: (3) demonstrate a controversy as to its own liability for ***direct*** infringement based on the patentee's allegations against customers, even absent direct threats against the supplier. *Id.* at 461-62.

Here, Plaintiffs' Complaint establishes SMJ under each of bases (1)-(3).

### 1.  Plaintiffs' allegations establish reasonable potential for indemnity obligations

Plaintiffs' indemnity obligations independently establish SMJ. *See Ibiquity Digit. Corp. v. Delaware Radio Techs.*, LLC, No. 14-853-GMS, 2015 WL 13885030, at *1, n.2 (D. Del. Jan. 7, 2015) (indemnity "relationship with even only a single" customer establishes SMJ).

6

Indemnity obligations establish jurisdiction where (1) an infringement controversy exists between a patentee and DJ plaintiff's customers, and (2) DJ plaintiff alleges facts establishing a "reasonable potential" it will be obligated to defend/indemnify the customers. *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 34 F.4th 1334, 1345-46 (Fed. Cir. 2022). Both requirements are met here: (1) BSLLC filed infringement actions against Plaintiffs' customers (Compl. ¶¶10-12), and (2) Plaintiffs alleged their customers requested indemnity and defense for BSLLC's allegations pursuant to indemnity provisions of Plaintiffs' license agreements. *Id.* ¶14. That suffices to establish jurisdiction. *E.g.*, *FedEx Corp. Servs., Inc. v. Eclipse IP LLC*, 15 F. Supp. 3d 1346, 1348-49 (N.D. Ga. 2013) (finding allegations of existence of indemnity agreements and customer indemnity demands sufficient).

BSLLC suggests Plaintiffs needed to concede indemnity liability. Mot. 9-10. The Federal Circuit rejected that notion in *Mitek*. 34 F.4th at 1346 ("[W]e have never held that the validity of an indemnity demand ... needs to be conceded.").[3] Only a "reasonable potential" of liability is required. *Id*. When considering a facial attack on jurisdiction, courts should "closely analyze the relevant indemnity

---

[3] *Mitek* thus abrogated decisions requiring DJ plaintiffs to concede indemnity liability. *E.g.*, *Microsoft Corp. v. SynKloud Techs., LLC*, 484 F. Supp. 3d 171, 179 (D. Del. 2020) (requiring "direct allegation" DJ plaintiff "is obligated to indemnify its customers").

allegations" to determine whether they suffice.  *Id.*  Alleging an indemnity request pursuant to a written agreement is sufficient.  *FedEx*, 15 F. Supp. 3d at 1348-49.

In *Mitek*, the DJ plaintiff alleged its customer contracts contained indemnity clauses covering the technology at issue in the underlying suit, and that it received indemnity requests from its customer.  *Id.* at 1338.  It provided no "concrete examples regarding indemnification [n]or attach[ed] any documents embodying an indemnification agreement or a demand for indemnification from any of its customers."  *Id.*  Instead, it pled that its "[customer] agreements include indemnification provisions relating to actual or alleged patent infringement by Mitek's technology ... [and] Mitek has received demands for indemnification from its customers and suppliers pursuant to [these] agreements."  *Id.*  Still, the Federal Circuit vacated the district court's dismissal for lack of jurisdiction.  *Id.* at 1349.

Plaintiffs' allegations pass muster under *Mitek*'s "reasonable potential" standard.  Plaintiffs allege: (1) they have customer contracts governing use of Plaintiffs' tools; (2) the contracts have indemnity provisions for infringement; and (3) customers requested indemnity for BSLLC's claims.  Compl. ¶14.  Plaintiffs' allegations match those in *Mitek* and establish a "reasonable potential" of indemnity liability.[4]

---

[4] As mentioned, Plaintiffs have agreed to defend/indemnify customers in connection with BSLLC's allegations, further underscoring a "reasonable potential" the indemnity requests are valid.  D.I. 11 ¶4; D.I. 12 ¶6.  If the Court finds the Complaint

BSLLC's remaining arguments that Plaintiffs have not established "reasonable potential" for indemnification liability likewise fail.

First, BSLLC argues Plaintiffs needed to allege the "precise scope" of their indemnity agreements under *Mitek* so the Court can assess the "merit" of the customers' indemnity requests. Mot. 8-9. BSLLC conflates a facial attack with a factual one. The *Mitek* court stated the precise scope of indemnity agreements "may" be relevant to a factual attack—not a facial attack like BSLLC's here. 34 F.4th at 1346. If the Court is inclined to entertain a factual attack on Plaintiffs' obligations, Plaintiffs will submit the underlying agreements, which have already been produced to BSLLC.

Second, BSLLC argues Plaintiffs pled themselves out of Court by noting disputes with certain customers as to the scope of Plaintiffs' indemnity obligations. Mot. 9 (citing D.I. 9 (PI motion)). But BSLLC sued dozens of Plaintiffs' customers, and Plaintiffs only noted disputes with "some" of them—not all. D.I. 9, 19. As mentioned, Plaintiffs have agreed to defend/indemnify at least NXP and Socionext, which is sufficient for jurisdiction, even assuming disputes with "some" customers. *Ibiquity*, 2015 WL 13885030, at *1, n.2.[5]

---

deficient for failure to allege such agreement, Plaintiffs should be granted leave to amend. *See infra* § IV.D.

[5] Plaintiffs' reservations of rights (Mot. 9) are also irrelevant, as they need not concede liability under *Mitek*.

Finally, BSLLC argues Plaintiffs have not individually established standing, pointing to allegations that companies BSLLC sued are customers of "one or both of the Plaintiffs." Mot. 10. As mentioned, NXP and Socionext are customers of both Plaintiffs. Indeed, BSLLC itself alleges—in materials referenced in the Complaint—that customers, including Socionext and NXP, are each "a customer of at least Cadence and Synopsys." Dyer Decl., Ex. 1 at 3; Ex. 2 at 2 n.1; Ex. 10 at 3; Ex 14 at 3. Thus, Plaintiffs individually have standing and no "speculation" is required.

The Court should deny BSLLC's facial challenge to Plaintiffs' indemnity obligations, which independently establish a justiciable controversy.

### 2. Controversy exists as to indirect infringement

BSLLC alleges customers directly infringe by using Plaintiffs' tools to practice the claims of the asserted patents. Compl. ¶¶59, 65, 71, 77. BSLLC's allegations impliedly contend Plaintiffs provide the customers with the components to infringe, as well as instructions for using those components in an infringing manner. *E.g.*, Compl., Ex. G2, *passim*. Those allegations thus establish a controversy between BSLLC and Plaintiffs as to Plaintiffs' liability for indirect infringement.

"[W]hen the holder of a patent with method claims accuses [a] supplier's customers of direct infringement based on their use of the supplier's product in the

performance of the claimed method, an implicit assertion of indirect infringement by a supplier may arise." *Arris*, 639 F.3d at 1375-76.  To determine whether a patentee made such an implied assertion, the Court "look[s] to the elements of the potential cause of action" under 35 U.S.C. §271. *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014).  A patentee's allegations against customers need only establish a "reasonable potential that such a claim [of indirect infringement] could be brought" against the supplier. *Id*.

Here, Plaintiffs face a reasonable potential of a claim of induced infringement under §271(b).  To allege Plaintiffs induced infringement, BSLLC would need to allege Plaintiffs "took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement."  *Id*. at 904. BSLLC's allegations against Plaintiffs' customers satisfy these elements.

*DataTern* is instructive.  The *DataTern* patentee accused DJ plaintiffs' customers of direct infringement based on their use of plaintiffs' software. *DataTern*, 755 F.3d at 902.  The patentee's claim charts in the customer cases "extensively refer[red] to ... functionality" of the DJ plaintiffs' software and cited plaintiffs' "user guides and documentation for each element" of the charted claims. *Id*.  The *DataTern* court found these claim charts established an actual controversy between the patentee and DJ plaintiffs. *Id*. at 905.  The court reasoned that, because the claim charts alleged infringement based on the customers' use of the accused

software and "cite[d] to [supplier]-provided user guides and documentation for each claim element," the charts alleged the supplier "provide[d] its customers with the necessary components to infringe ... as well as the instruction manuals for using the components in an infringing manner," which the court held was "evidence of the required mental state." *Id*.[6]

BSLLC's allegations here are strikingly similar.  BSLLC alleges customers infringe by using Plaintiffs' tools.  Compl. ¶¶1-2, 13, 15, 46-47, 59-60, 66-67, 71-72, 78-79, 79-80, 85-86.  And BSLLC's claim charts—as in *DataTern*—cite to Plaintiffs' manuals and documentation for virtually every element.  For the '803 Patent, for instance, BSLLC's claim charts cite to and include screenshots from the Cadence's Innovus user guide for every claim element.  Dyer Decl., Ex. 14, *passim*. BSLLC's claim charts for the '989 Patent cite to and include screenshots from Synopsys' IC Validator product literature for every claim element. Dyer Decl., Ex. 12, *passim*. BSLLC's claim charts and expert declarations for the remaining patents are substantially similar.  *Supra* at 3, n.1 (claim charts); Dyer Decl., Exs. 17, 21-22, 25-27 (expert declarations).

---

[6] As to one patent, the court held there was no controversy between the patentee and one DJ plaintiff because the relevant claim chart "cite[d] exclusively to third-party . . . documentation for several key claim limitations."  *DataTern*, 755 F.3d at 905 n.5.  None of BSLLC's charts cite to non-party documentation, other than identification of the customer devices purportedly designed using Plaintiffs' tools.

Thus, as in *DataTern*, BSLLC's claim charts allege Plaintiffs provide customers with the components to infringe, as well as instruction manuals for using the components in an infringing manner.  The charts, therefore, impliedly assert indirect infringement against Plaintiffs.  *DataTern*, 755 F.3d at 905; *see also Citrix Sys., Inc. v. Parallel Networks Licensing, LLC*, No. 19-2005-LPS, 2020 WL 2309073, at *2-6 (D. Del. May 8, 2020) (finding controversy as to indirect infringement where complaint in customer case "relie[d] on [DJ plaintiff's] user manuals and documentation in its description of the alleged infringement").[7]

BSLLC argues a patentee must "manifest[] an intent to assert" its patents by "act[ing] 'overtly and specifically toward[s]'" Plaintiffs to establish a controversy. Mot. 11.  BSLLC is wrong, and its own cited cases demonstrate no such requirement. *See Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp. 2d 606, 610 (D. Del. 2009) ("overt, specific act toward the declaratory judgment plaintiff is not required to demonstrate the existence of an actual controversy"); *DataTern*, 755 F.3d at 905 (finding jurisdiction despite absence of overt act).[8]

---

[7] BSLLC's contentions do not need to "compel the conclusion" Plaintiffs also infringe.  Mot. 12 (citing *Fujitsu Ltd. v. Nanya Tech. Corp.*, No. 06-6613, 2008 WL 3539503, at *3 (N.D. Cal. Aug. 12, 2008)).  They need only establish a "reasonable potential" BSLLC could bring a claim for indirect infringement. *DataTern*, 755 F.3d at 905.  Regardless, BSLLC's contentions meet either standard.

[8] *Edmunds* concluded "more" was required in the absence of an "overt, specific act." 598 F. Supp. 2d at 610.  *Mitek* concluded "more" was shown by the claim charts

As the Supreme Court made clear in *MedImmune*, rigid tests for DJ jurisdiction are inappropriate, as "all the circumstances" must be considered in determining whether a substantial controversy exists.  549 U.S. at 127; *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009) ("conduct that can be reasonably inferred as demonstrating [an] intent to enforce a patent can create declaratory judgment jurisdiction").  BSLLC's avoidance of "overt" and "specific" threats against Plaintiffs therefore does not eliminate the ***implied*** threat of infringement created by its own pleadings.  *Hewlett-Packard*, 587 F.3d at 1362 ("purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as 'litigation' or 'infringement'"); *Arris*, 639 F.3d at 1379 ("an express accusation" of infringement "is unnecessary"); *Applied Materials Inc. v. Cohen*, No. 17-CV-04990-EMC, 2018 WL 1400378, at *5-7 (N.D. Cal. Mar. 20, 2018) (finding controversy as to indirect infringement without "any contact or affirmative acts of patent enforcement taken against" DJ plaintiff).

Nevertheless, BSLLC has acted "overtly and specifically" towards Plaintiffs.  In BSLLC's ITC cases against customers, BSLLC subpoenaed information about Plaintiffs' tools in connection with its infringement allegations.  Compl. ¶83.

---

patentee sent to customers and an assertion that software used by customers "operates in a similar way."  34 F.4th at 1345.

BSLLC's "subpoena requests demonstrate [BSLLC's] intent to enforce its patents and the threat of future injury facing" Plaintiffs themselves. *Applied Materials, Inc. v. Demaray LLC*, No. 5:20-CV-09341-EJD, 2021 WL 4222177, at *6 (N.D. Cal. Sept. 16, 2021).[9] Nor has BSLLC provided Plaintiffs a covenant-not-to-sue, further demonstrating the existence of a justiciable dispute. *Id.* at *7; *Arris*, 639 F.3d at 1381.

Finally, BSLLC's reliance on *WebXchange* is misplaced. *WebXchange* predates *Arris* and *DataTern* and improperly required that the patentee's contentions against customers would "necessitate a finding that [DJ plaintiff] itself infringed"—rather than merely establishing a "reasonable potential" of an indirect infringement claim being brought. *Microsoft Corp. v. WebXchange Inc.*, No. CA 09-484-JJF, 2009 WL 3534845, at *4 (D. Del. Oct. 30, 2009). It is also distinguishable, as the patentee there alleged infringement based on a "larger [customer] system, of which" DJ plaintiff's software was "just one part." *Id*. at *3. Here, by contrast, BSLLC's allegations are based solely on use of Plaintiffs' tools.

---

[9] Contrary to BSLLC's suggestion (Mot. 12), the Federal Circuit did not hold in *Mitek* that subpoenas should be given "no weight" in the jurisdictional analysis, but instead faulted the district court for not providing adequate reasoning for its finding of no jurisdiction. *Mitek* did not comment on the relevance of a subpoena. 34 F.4th at 1342-44.

### 3. Controversy exists as to direct infringement

BSLLC also impliedly asserts direct infringement against Plaintiffs by alleging customers directly infringe the asserted patents by using Plaintiffs' tools. *See Microsoft Corp. v. GeoTag, Inc.*, No. 11-175-RGA, 2014 WL 4312167, at *2 (D. Del. Aug. 29, 2014). Because it "is entirely possible that a customer and vendor can both directly infringe a patent based upon the same conduct," where the supplier engages in similar conduct as the customer, the patentee "could just as easily have asserted a claim of direct infringement against [supplier] based on the same underlying circumstances in the customer suits." *Id*. In these circumstances, an "express accusation" against the supplier is "unnecessary." *Id*. (finding jurisdiction based on "reasonable potential" of direct infringement claim against DJ plaintiff).

Because BSLLC alleges infringement under §271(a) (Compl. ¶¶59, 65, 71, 77) and Plaintiffs themselves use their tools—including for R&D, testing, and demonstration purposes—BSLLC's allegations against customers also establish a controversy as to Plaintiffs' liability for direct infringement. *See* Compl. ¶¶17, 41, 93, 97, 101, 105, 109, 113, Prayer For Relief (seeking declarations Plaintiffs "do not directly or indirectly infringe").

*Demaray* is instructive. 2021 WL 4222177. There, the patentee asserted method claims against DJ plaintiff's customers, alleging infringement based on use of DJ plaintiff's products. *Id*. at *2. Although the patentee had not directly accused

16

the plaintiff of infringement, the court nonetheless found a controversy as to plaintiff's liability for direct infringement. *Id.* at \*7. In particular, the *Demaray* patentee—like BSLLC—accused customers of "directly infringing ... method claims" by using DJ plaintiff's technology. *Id.* Patentee's infringement contentions "clearly identified" plaintiff's technology "as embodying numerous elements of the asserted claims," and—like BSLLC—patentee "relied in part on [plaintiff's] literature and documentation about" plaintiff's technology for almost every claim limitation. *Id.* Because the DJ plaintiff had also used the software accused of practicing the patentee's claims, the court found a "sufficient threat of a claim for direct infringement" against plaintiff "so as to give rise to an actual controversy." *Id.*

Here, BSLLC accuses customers of infringing the asserted patents by using Plaintiffs' tools, and BSLLC cites to nothing but Plaintiffs' tools in its claim charts. *E.g.*, Dyer Decl., Ex. 14, *passim*; Ex. 12, *passim*; *supra* at 3, n.1.[10] BSLLC's contentions thus impliedly assert Plaintiffs directly infringe the asserted patents because Plaintiffs also use their tools, including for R&D, testing, and demonstration purposes. *See* Compl. ¶¶2-7.[11] BSLLC, therefore, "could just as easily have asserted

---

[10] BSLLC alleges each Plaintiff's software infringes the asserted patents in the same way. *E.g.*, Dyer Decl., Ex. 1 at 1; Ex. 2 at 1; Ex. 8 at 1; Ex. 9 at 1; Ex. 10 at 1; Ex. 11 at 1; Ex. 12 at 1.

[11] Construed in the light most favorable to Plaintiffs, Plaintiffs' allegations make it implausible that Plaintiffs do not use their own software for research, development,

a claim for direct infringement against" Plaintiffs.  *Demaray*, 2021 WL 4222177, at *7; *GeoTag*, 2014 WL 4312167, at *2.  Thus, "there is a sufficient threat of a claim for direct infringement under 35 U.S.C. §271 against [Plaintiffs] so as to give rise to an actual controversy."  *Demaray*, 2021 WL 4222177, at *7; *Cohen*, 2018 WL 1400378, at *3-4.

BSLLC does not address the controversy as to Plaintiffs' direct infringement. But like indirect infringement, there is no requirement for BSLLC to "act[] 'overtly and specifically'" towards Plaintiffs or "manifest its intent" to sue.  Mot. 11; *Hewlett-Packard*, 587 F.3d at 1362; *Mobile Telecomms.*, 247 F. Supp. 3d at 461-62 (DJ plaintiff need not show "specific threats of litigation against them" to establish jurisdiction).  And again, BSLLC's subpoena to Plaintiffs and its failure to provide a covenant-not-to-sue further supports finding a controversy as to direct infringement.  *Demaray*, 2021 WL 4222177, at *6-7.

Thus, there is also a justiciable controversy between BSLLC and Plaintiffs as to Plaintiffs' liability for direct infringement.

## C.    The Court Should Not Decline Jurisdiction

"There must be well-founded reasons for declining to entertain a declaratory judgment action."  *Mitek*, 34 F.4th at 1347 (cleaned up).  Bell provides none.

---

testing, and demonstration purposes. Compl. ¶¶2, 7. Regardless, if the Court finds the Complaint is deficient for failure to describe such use in more detail, Plaintiffs should be granted leave to amend their Complaint. *See infra* § IV.D.

First, Bell's argument Plaintiffs should have intervened in each customer case ignores the impracticality of doing so.   Mot. 20-21.   The primary question is "whether ultimately the intervention route is **more effective or efficient** than the declaratory-judgment route." *Mitek*, 34 F.4th at 1347-48 (emphasis added).

Here, intervention in dozens of cases would be impractical and wasteful.[12] Even if Plaintiffs could successfully intervene in each case—which itself would require substantial time and money—they would be forced to litigate the same issues of whether their EDA tools infringe and whether the asserted patents are valid in over 35 lawsuits, needlessly burdening both Plaintiffs and the judiciary and risking inconsistent outcomes on these issues.[13]   Proceeding here, by contrast, would allow Plaintiffs to efficiently resolve these issues in a single forum, confirming intervention is not a better alternative.   *Mitek*, 34 F.4th at 1347 (court may decline jurisdiction "where an alternative remedy is **better or more effective**") (emphasis added).

---

[12] Even if some customers settle (Mot. 10, n.2), at least 35 suits against ten customers will proceed.

[13] The Federal Circuit's passing statement in *DataTern*, 755 F.3d at 904, that a DJ plaintiff could intervene in a customer case (Mot. 20) was dicta; the plaintiff had no indemnity obligations to the customers at issue.   Regardless, *DataTern* is distinguishable: there was only *one* customer case, such that the plaintiff could "efficiently" defend the customers there.   *DataTern*, 755 F.3d at 904.   For similar reasons BSLLC's reliance on *Cellco Partnership v. Broadcom Corp.*, which involved a single related district court case and single ITC action, is misplaced.   227 F. App'x 889, 890 (Fed. Cir. 2007).

Second, BSLLC's laches argument fails.   For starters, Plaintiffs did not unreasonably delay in bringing suit.   While BSLLC filed a handful of cases in spring and summer, it filed **thirty** cases in August, seven in September, and another **thirty** in October.   Compl. ¶¶10-11.   Plaintiffs filed suit in November, shortly after BSLLC's litigation campaign grew to unreasonable proportions.   BSLLC cites *Vita-Mix*, 581 F.3d at 1333, but *Vita-Mix* involved a delay of over **five years**, and even then, the court found no laches.

Nor was BSLLC prejudiced by "delay."   Laches prejudice must stem from the alleged delay itself.   *Vita-Mix*, 581 F.3d at 1333.   BSLLC misunderstands this and alleges purported prejudices from delay in resolving the customer suits, such as customer bankruptcy and loss of evidence relevant to the customer cases.   Mot. 15-17.   This is irrelevant (and, in any case, speculative).   Nor are BSLLC's expenditures to-date from prosecuting the customer cases relevant.   In any case, those harms are of BSLLC's own making, as it intentionally chose to file 3-4 suits per customer, needlessly multiplying its own costs.

Third, BSLLC's assertion that this case is not "useful" is meritless.   BSLLC does not dispute that if Plaintiffs prevail on invalidity, 35 customer cases are mooted. Mot. 19-20; *see Blonder-Tongue Lab'ys., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 349-50 (1971).   And BSLLC's contention that it can proceed against customers even if Plaintiffs prevail on infringement is wrong on the law.   As the Federal Circuit

20

confirmed, the Supreme Court's *Kessler* doctrine operates to preclude patentees like BSLLC from asserting customers' use of suppliers' technology—including software—infringes once the suppliers obtain a judgment of non-infringement. *See SpeedTrack, Inc. v. Off. Depot, Inc.*, 791 F.3d 1317, 1324-29 (Fed. Cir. 2015).[14] Thus, this case is nothing like *Cellco*, 227 F. App'x 889, which had no such potential to moot 35 other cases.

This case is also "useful" because it would allow Plaintiffs—the entities with the greatest knowledge of, and strong interest in defending, the accused EDA tools—to efficiently litigate BSLLC's infringement allegations in one forum. For this reason, "manufacturer suits" like this one routinely "take[] precedence" over "customer suits" like BSLLC's under the "customer suit" exception—even where customers do not agree to be bound by the manufacturer suit. *Katz*, 909 F.2d at 1464 (affirming injunction against customer suit in view of manufacturer's DJ suit, even where customers did not agree to be bound and where "additional issues involving the [customers]" could remain after resolution of the manufacturer suit).

In short, there is no reason for the Court to decline jurisdiction over this case.

---

[14] *WebXchange*, 2009 WL 3534845, at *4, cited by BSLLC for the opposite proposition (Mot. 19), is unsupported by Federal Circuit authority. *WebXchange* cites *Fujitsu*, 2008 WL 3539503, at *3, but *Fujitsu* cites no legal authority for the proposition in question.

### D.   If Necessary, Plaintiffs Should Be Granted Leave to Amend

If jurisdictional facts are not sufficiently alleged, Plaintiffs request leave to amend.   Fed. R. Civ. P. 15(a).   Plaintiffs have not previously amended, and amendment would not prejudice BSLLC.   Amendment, moreover, would "ensure ... claims are decided on the merits rather than on technicalities." *Vitaworks IP, LLC v. Glanbia Nutritionals (NA), Inc.*, No. 19-2259-CFC, 2021 WL 5061707, at *1 (D. Del. Oct. 26, 2021) (cleaned up).

## V.   CONCLUSION

For these reasons, BSLLC's Motion should be denied.

Dated: January 25, 2023

OF COUNSEL:

Krista S. Schwartz
Barrington Dyer
WILLKIE FARR & GALLAGHER
LLP
One Front Street
San Francisco, CA 94111
(415) 858-7400
kschwartz@willkie.com
bdyer@willkie.com

Shaimaa Hussein
WILLKIE FARR & GALLAGHER
LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

  /s/ Robert M. Vrana
Anne Shea Gaza (No. 4093)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
pkraman@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

*Attorneys for Synopsys, Inc. and
Cadence Design Systems, Inc.*

shussein@willkie.com

Aliza George Carrano
WILLKIE FARR & GALLAGHER
LLP
1875 K Street, N.W.
Washington, DC 20006
(202) 303-1000
acarrano@willkie.com

*Attorneys for Synopsys, Inc.*

Jeffrey A. Miller
Joseph Palmieri
ARNOLD & PORTER KAYE
SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306
(650) 319-4538
jeffrey.miller@arnoldporter.com
joseph.palmieri@arnoldporter.com

Matthew M. Wolf
Jennifer Sklenar
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
(202) 942-5786
matthew.wolf@arnoldporter.com
jennifer.sklenar@arnoldporter.com

Kurt Riester
Lindsay Strong
ARNOLD & PORTER KAYE
SCHOLER LLP
70 West Madison Avenue, Suite 4200
Chicago, IL 60602
(312) 583-2300

kurt.riester@arnoldporter.com
lindsay.strong@arnoldporter.com

*Attorneys for Cadence Design Systems,*
*Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SYNOPSYS, INC. and | ) | |
| CADENCE DESIGN SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 22-1512-CFC |
| | ) | |
| v. | ) | DEMAND FOR JURY TRIAL |
| | ) | |
| BELL SEMICONDUCTOR, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATION OF COMPLIANCE

The undersigned certifies that Plaintiffs' Answering Brief in Opposition to Defendant's Motion to Dismiss Complaint is in Times New Roman 14-point font and contains 4,987 words, exclusive of caption, tables, and signature block, counted using Microsoft Word's word count feature.

Dated: January 25, 2023

OF COUNSEL:

Krista S. Schwartz
Barrington Dyer
WILLKIE FARR & GALLAGHER
LLP
One Front Street
San Francisco, CA 94111
(415) 858-7400
kschwartz@willkie.com
bdyer@willkie.com

Shaimaa Hussein

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Alexis M. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
pkraman@ycst.com

1

WILLKIE FARR & GALLAGHER
LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
shussein@willkie.com

Aliza George Carrano
WILLKIE FARR & GALLAGHER
LLP
1875 K Street, N.W.
Washington, DC 20006
(202) 303-1000
acarrano@willkie.com

*Attorneys for Synopsys, Inc.*

Jeffrey A. Miller
Joseph Palmieri
ARNOLD & PORTER KAYE
SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306
(650) 319-4538
jeffrey.miller@arnoldporter.com
joseph.palmieri@arnoldporter.com

Matthew M. Wolf
Jennifer Sklenar
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
(202) 942-5786
matthew.wolf@arnoldporter.com
jennifer.sklenar@arnoldporter.com

Kurt Riester
Lindsay Strong

rvrana@ycst.com
astombaugh@ycst.com

*Attorneys for Synopsys, Inc. and
Cadence Design Systems, Inc.*

ARNOLD & PORTER KAYE
SCHOLER LLP
70 West Madison Avenue, Suite 4200
Chicago, IL 60602
(312) 583-2300
kurt.riester@arnoldporter.com
lindsay.strong@arnoldporter.com

*Attorneys for Cadence Design Systems, Inc.*

## <u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on January 25, 2023, a copy of the foregoing document was served on the persons listed below in the manner indicated:

<u>**BY EMAIL**</u>

Brian E. Farnan
Michael J. Farnan
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Kyle Ryman
MCKOOL SMITH, P.C.
303 Colorado Street, Suite 2100
Austin, TX 78701
kryman@McKoolSmith.com

Lauren H. Simenauer
MCKOOL SMITH, P.C.
1999 K Street NW
Washington, D.C. 20006
lsimenauer@mckoolsmith.com

David Sochia
Ashley Moore
Richard Kamprath
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
dsochia@McKoolSmith.com
amoore@McKoolSmith.com
rkamprath@McKoolSmith.com

Joshua J. Newcomer
MCKOOL SMITH, P.C.
600 Travis Street, #7000
Houston, TX 77002
jnewcomer@McKoolSmith.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801

(302) 571-6600
agaza@ycst.com
pkraman@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

*Attorneys for Synopsys, Inc. and*
*Cadence Design Systems, Inc.*