## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| SYNOPSYS, INC., | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) C.A. No. 22-1512-CFC |
| v. | ) |
|  | ) **REDACTED -** |
| BELL SEMINCONDUCTOR, LLC, | ) |
|  | ) **PUBLIC VERSION** |
| Defendant. | ) |
|  | ) |

## PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS MOTIONS TO EXCLUDE THE EXPERT TESTIMONY OF <u>MR. BERG AND DR. KESAN</u>

Dated: September 18, 2023

OF COUNSEL:

Krista S. Schwartz
Barrington Dyer
Brandon K. Franklin
Jacob Karim
WILLKIE FARR & GALLAGHER LLP
One Front Street
San Francisco, CA 94111
(415) 858-7400
kschwartz@willkie.com
bdyer@willkie.com
bfranklin@willkie.com
jkarim@willkie.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
pkraman@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

*Attorneys for Synopsys, Inc.*

Shaimaa Hussein
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
shussein@willkie.com

Aliza George Carrano
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006
(202) 303-1000
acarrano@willkie.com

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF FACTS AND NATURE OF PROCEEDINGS .........................1

I.  BERG'S QUALIFICATIONS AND ANALYSIS.............................1

II.  KESAN'S DAMAGES CALCULATION...........................................4

III.  BELL'S RELIANCE ON UNDISCLOSED THEORIES AND DOCUMENTS ....................................................................................6

ARGUMENT ...............................................................................................8

I.  BELL'S EXPERTS FAIL TO MEET THE REQUIREMENTS OF RULE 702 .....................................................................................8

    A.  Daubert No. 1: Bell's Technical Expert Should Be Excluded..................................................................................8

        1.  Berg is not qualified to render his opinions. ...................9

        2.  Berg's conclusions on infringement and validity are not supported by reliable methodology. ..................10

        3.  Berg's rebuttal report offers inadmissible legal opinions..........................................................................13

    B.  Daubert No. 2:  Bell's Damages Expert Should Be Excluded................................................................................14

        1.  Kesan's methodology relies entirely on a single settlement agreement. ....................................................15

        2.  Kesan's damages calculation fails to apply the Georgia-Pacific factors and is not sufficiently tied to the facts of this case....................................................17

II.  BELL'S EXPERT REPORTS MUST BE STRICKEN UNDER RULE 37.............................................................................................19

A.      Undisclosed Theories Relied Upon by Berg.............................19

B.      Undisclosed Documents and Theories Relied Upon by
        Kesan ........................................................................................21

CONCLUSION ........................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps">CASES</span>

*ART+COM Innovationpool GmbH v. Google Inc.*,
  155 F.Supp.3d 489 (D. Del. 2016)....................................................................15

*Avocent Redmond Corp. v. Rose Elecs.*,
  No. C06-1711RSL, 2013 WL 8844098 (W.D. Wash. Mar. 11,
  2013) ..............................................................................................................16

*BASF Corp. v. Johnson Matthey, Inc.*,
  No. 14-1204-RGA, 2018 WL 2729123 (D. Del. June 6, 2018) ........................14

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
  455 F.3d 195 (3d Cir. 2006) .....................................................................13, 14

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)...........................................................................................7

*Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys., LLC*,
  927 F.3d 1292 (Fed. Cir. 2019) .......................................................................17

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) ..................................................................14, 18

*Schneider ex rel. Estate of Schneider v. Fried*,
  320 F.3d 396 (3d Cir. 2003) ..............................................................................8

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) .......................................................................16

*General Electric Company v. Joiner*,
  522 U.S. 136 (1997)........................................................................................13

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F.Supp. 1116 (S.D.N.Y. 1970) .............................................14, 15, 17, 18

*Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*,
  589 F.3d 1179 (Fed. Cir. 2009) .......................................................................10

*INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*,
No. 11-1007-SLR-CJB, 2013 WL 3216109 (D. Del. June 25, 2013) .......... 19, 21

*Lab'y Skin Care, Inc. v. Ltd. Brands, Inc*.,
661 F. Supp. 2d 473 (D. Del. 2009) ................................................. 20

*Laitram Corp. v. Rexnord, Inc*.,
939 F.2d 1533 (Fed. Cir. 1991) .......................................................... 10

*Lannett Co. Inc. v. KV Pharm., Drugtech Corp*.,
No. 08-338-JJF, 2009 WL 10657988 (D. Del. Mar. 9, 2009) ............................ 14

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ............................................................... 15

*Lucent Techs., Inc. v. Gateway, Inc*.,
580 F.3d 1301 (Fed. Cir. 2009) .......................................................... 14

*Magnetar Techs. Corp. v. Six Flags Theme Parks Inc*.,
No. 07-127-LPS-MPT, 2014 WL 529983 (D. Del. Feb. 7, 2014)................. 9, 12

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
No. 13-304-LPS, 2016 WL 4490706 (D. Del. Aug. 25, 2016) ......................... 15

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
559 F.2d 894 (3d Cir. 1977) ............................................................... 20

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc*.,
30 F.4th 1339 (Fed. Cir. 2022) .......................................................... 17

*In re Paoli R.R. Yard PCB Litig*.,
35 F.3d 717 (3d. Cir. 1994) ............................................................... 10

*Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc*.,
No. 17-1734-RGA, 2021 WL 979307 (D. Del. Mar. 16, 2021) ......................... 22

*Sundance, Inc. v. DeMonte Fabricating Ltd*.,
550 F.3d 1356 (Fed. Cir. 2008) ............................................................ 9

*TQ Delta, LLC v. Adtran, Inc.*,
No. 13-1835-RGA, 2021 WL 3202077 (D. Del. July 31, 2020) ....................... 21

*VirnetX, Inc. v. Cisco Systems*,
  767 F.3d 1308 (Fed. Cir. 2014) ........................................................................18

*Waldorf v. Shuta*,
  142 F.3d 601 (3d Cir. 1998) ...............................................................................9

**RULES**

Fed. R. Civ. P. 26 .....................................................................................1, 8, 22

Fed. R. Civ. P. 26(a) ....................................................................................19, 22

Fed. R. Civ. P. 26(a)(1)(iii) ........................................................................6, 7, 21

Fed. R. Civ. P. 33 ...............................................................................................8

Fed. R. Civ. P. 37 .........................................................................................1, 19

Fed. R. Civ. P. 37(c)(1) ....................................................................................19

Fed. R. Evid. 702 ......................................................................................*passim*

Synopsys moves to exclude Bell's experts, John Berg and Jay Kesan, pursuant to Federal Rule of Evidence 702 and to strike their expert reports pursuant to Federal Rule of Civil Procedure 37.  The opinions of Berg, who is not qualified to render such opinions, regarding infringement and validity are not supported by reliable methodology, and his opinions on patentability are inadmissible legal opinions. Kesan's damages calculation relies on a single settlement agreement, to which Kesan fails to make the necessary adjustments, nor does Kesan analyze the value of the Asserted Patents or conduct an apportionment analysis.  And, even if any portion of these experts' opinions were admissible, they rely on theories and documents that Bell failed to timely disclose as required by this Court's Scheduling Order and Rule 26, and must be stricken on that independent basis.

## STATEMENT OF FACTS AND NATURE OF PROCEEDINGS

## I.  BERG'S QUALIFICATIONS AND ANALYSIS

The Synopsys software products at issue are the most sophisticated Integrated Circuit ("IC") Electronic Design Automation ("EDA") tools that exist.  Bell's technical expert, John Berg, lacks the qualifications of a person of ordinary skill in the art, including the software knowledge and skills needed to analyze infringement and validity.

Berg has no source code review experience, has never used source code review tools, and has never programmed in C++, the primary language used to write

1

the source code of the Accused Products. (Ex. 12, 27:20-23.) Berg did not

personally inspect any source code and was only provided select "source code"

printouts by Bell's counsel. (*Id.* 94:12-95:1,97:3-20.) Most of these printouts are

key-word search results, showing isolated lines of code with no surrounding context,

which reveal little if anything about the structure and operation of the Accused

Products. (*Id.*, 178:16-23,179:18-20,193:7-194:2; *see also* Ex. 22, ¶¶72-75; Ex. 20,

¶¶70-73; Ex. 21, ¶¶75-78.)

Having no source code review experience, Berg confessed he only "skimmed"

the "source code" printouts for the Accused Products rather than analyzed it. (Ex.

12,191:8-25,233:1-4.) And even though he only reviewed a small curated portion

of the overall source code, (*id.*, 98:25-99:5), Berg did not "factor into [his] opinion"

which of the Accused Products the code related to, even though "the likelihood of

all the systems having identical code for specific things, exactly the same code, was

perhaps pretty low." (*Id.*, 196:24-198:21.) Worse, for one product—Fusion

Compiler—Berg admitted he did not review *any* source code because he "was not

provided Fusion code." (*Id.*, 199:8-200:17.)

Nor did Berg test the Accused Products (or the prior art systems) to determine

whether they infringe. (*Id.*, 99:6-24,101:7-16,102:4-10 ("I did not run any of the

tools … for this case"), 100:4-101:2 (same for prior art).) Nor did he request access

to the products. (*Id.*, 102:17-19.) Given his lack of analysis, Berg was unable to say

how the Accused Products differed (*id*., 112:12-22 ("I'd have to get back to you on that")) and unable to say which products allegedly infringe (*id.*, 154:17-155:14 ("I haven't made a full determination of whether all of them [infringe] or whether it's specific to one")).

    Berg's opening report contains only two paragraphs of infringement "analysis" per patent. (Ex. 18, ¶¶168-79.) For each, Berg opines , but he never specifies whether: all infringe, all infringe when used together, an unspecified subset infringe, or none infringe. (*Id*., ¶¶168,170172,174,176,178)(emphasis added). As exhibits to his report, Berg attaches claim charts that parrot the claim language and add unexplained source code citations devoid of analysis. (*See, e.g.*, *id.*, Ex. 4-2 at p.7; Ex. 12, 162:10-163:1

In other charts, Berg asserts infringement based on "information and belief" in place of any analysis. (Ex. 18, Ex. B at pp.1, 3).

    When his lack of analysis was exposed by Synopsys' experts in their rebuttal reports, Berg responded not with analysis but a declaration that, in his opinion,

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████     (Ex. 19, ¶¶23,41-43,70,72-73.)    Berg

repeatedly attempts to rely on his "say-so" as to what a POSITA would understand

as substitute for analysis.

Berg's rebuttal report on invalidity fairs no better.  His rebuttal report is filled

with case law citations and analysis on patent eligibility that he received from Bell's

counsel.  (Ex. 37, ¶¶74,79-80,82,90,92,100,114; Ex. 12, 263:6-264:23.)  And his

rebuttal opinions on validity similarly include conclusory opinions that did not

originate with him.  (Ex. 12, 290:2-6.)

## II.    KESAN'S DAMAGES CALCULATION

Bell's damages expert, Jay Kesan, concludes that ████████████████

████████████████████████████████     (Ex. 16, ¶¶18,140,160-61.)

Kesan makes two upwards adjustments to the ████████ amount agreed to in a

settlement agreement between Bell and Cadence (the "Cadence Settlement").  This

is the entirety of Kesan's damages "analysis."  He did not conduct any analysis of

the value of the Asserted Patents, and assumed instead that Cadence and Bell would

have done so in reaching the Cadence Settlement.  (Ex. 13, 173:16-192:13.)  Nor did

Kesan conduct any apportionment analysis to determine how much of the revenue

generated by the Asserted Patents is apportioned to the patented features.  Kesan

even acknowledges he "does not try to trace revenues to the various ways in which Synopsys uses the asserted patents."  (Ex. 16, ¶157; Ex. 13, 72:11-16 ("I did not assign a specific value to a specific feature").)  Kesan had no involvement in the Cadence Settlement (*id.*, 73:13–74:16), and simply assumed that in agreeing to settle for ███████, Cadence and Bell would have done so because they "are very sophisticated parties."  (Ex. 13, 71:20-72:9,147:1-13 (assuming "any license paid by Cadence necessarily included an apportionment").)  Nor did Kesan account for the critical differences between the litigation precipitating the Cadence Settlement and the hypothetical negotiation that was the basis of his analysis, ████████████ ███████████████████████████ (Ex. 16, ¶140; Ex. 13, 124:1-128:6), or the fact that the Cadence Settlement related to ████████, while there are only six at issue here (Ex. 16, ¶120).

Using the ████████ paid by Cadence as his starting point, Kesan then makes two adjustments to reach his reasonably royalty for Synopsys: the first is an adjustment to █████████████████████████████████████████ ██████ and second he considers that "[t]he overall percentage of success, including the pretrial and trial stages, enjoyed by patent holders is 25%, if the patent holder is an NPE" citing to a patent litigation study conducted by PwC. (*Id.*)  Kesan did not independently verify this 25% figure, and assumed it was reasonable based

on a patent holder's 50% chance of proving validity and 50% chance of proving infringement.  (Ex. 13, Kesan Tr. 200:16-201:9.)

In response to Synopsys's expert's rebuttal report (the "Kesan Reply"), Kesan opines that ███████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████  (Ex. 38, ¶22.)  Having admitted that he did no valuation of the Asserted Patents and was provided no valuation of the Asserted Patents, Kesan testified that he infers value to the six Asserted Patents because those are the ones that have been raised in litigation (Ex. 13, 180:3-184:19).  He also relied on declarations from two experts (never disclosed to Synopsys here) offered by Bell in an entirely separate litigation, suggesting that the asserted technologies are ubiquitous in the industry.  (Ex. 13, 59:5-19,64:2-65:14,155:2-156:20,159:8-160:5,182:12-18,188:5-15,189:21-190:7; Ex. 38, ¶¶29,35,41.)

## III.  BELL'S RELIANCE ON UNDISCLOSED THEORIES AND DOCUMENTS

Pursuant to this Court's Scheduling Order and the Federal Rules, Bell was required to make specific disclosures about its theories of infringement and damages.  (D.I. 73, ¶3-4; Fed. R. Civ. P. 26(a)(1)(iii).)

Bell served its Infringement Disclosures on May 12, 2023.  (Ex. 14.)  On May 23, 2023, Synopsys notified Bell of the deficiencies in its Infringement Disclosures.  (Ex. 17, 2-3.)  Bell supplemented its Disclosures without leave of Court, on June 8

and July 19 (*see* D.I. 168, 70:1-21 (Markman Tr.)), although the revisions did not remedy the deficiencies.  (Ex. 15 (July 19 supplement).)  After receiving expert reports that raised undisclosed theories, Synopsys conferred with Bell and raised this dispute with the Court.  (D.I. 181, 16:8-17:1.)  The Court noted that if the expert reports raised new theories, the only issue to decide would be whether Bell had good cause for its belated disclosure.  (*Id.*, at 17:22–18:16.)  Bell represented to the Court there were no new theories.  (*Id.*, at 17:9-19:18.)  The Court instructed Synopsys to raise the untimely disclosures with its *Daubert* motion.  (*Id.*, at 20:13-25.)

In its Initial Disclosures, Bell was required to disclose "the identification of any direct infringement" for each claim alleged to have been indirectly infringed, "each limitation of each asserted claim … alleged … under the doctrine of equivalents," the "timing of the point of first infringement, the start of claimed damages, and the end of claimed damages," "a computation of each category of damages" or "the documents or other evidentiary material ... on which each computation is based."  Fed. R. Civ. P. 26(a)(1)(iii).  While Bell later identified certain categories of documents in response to a letter from Synopsys pointing out each of these deficiencies, Bell did not provide the other information until it served its expert reports.  (*See* Ex. 17.)

On damages, Bell did not provide an alleged point of first infringement or any damages computations or data, much less an alleged damages period, in its

contentions, stating only that "a determination of a reasonable royalty cannot be made at this time" and it "will rely on a damages expert." (Ex. 39, p.10.)  And in contravention of Rules 26 and 33, in response to Interrogatories seeking the same information, Bell simply incorporated its forthcoming damages report by reference. (Ex. 40, Rogs 1,9; Ex. 11, Rogs 23,30.)  On indirect infringement and doctrine of equivalents, Bell still has yet to identify the alleged direct infringer (or the specific acts of Synopsys that allegedly induce and contribute to that unspecified infringement) and Bell's ***Reply*** Report alleged new "equivalents" not contained in any of Bell's infringement contentions or even its opening expert reports.  (*See* Ex. 19, ¶¶23,35,37,39,55,63,66,68,72.)

## ARGUMENT

### I.  BELL'S EXPERTS FAIL TO MEET THE REQUIREMENTS OF RULE 702

Rule 702 requires that expert witnesses possess specialized expertise and set forth reliable testimony based on the methods and procedures of science rather than on subjective belief or unsupported speculation, for the purpose of assisting the trier of fact.  *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003).  Neither Kesan nor Berg satisfy these requirements.

### A.   Daubert No. 1: Bell's Technical Expert Should Be Excluded

### 1.    Berg is not qualified to render his opinions.

Rule 702 requires the witness to have "specialized knowledge" regarding the area of testimony and "at a minimum, a proffered expert witness ... must possess skill or knowledge greater than the average layman[.]" *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998).   To be an infringement expert in a patent matter the individual must be "qualified as an expert in the pertinent art." *Sundance, Inc. v. DeMonte Fabricating Ltd*., 550 F.3d 1356, 1363 (Fed. Cir. 2008).

Berg lacks the required qualifications to render the opinions set forth in his own reports.   By his own admission, Berg has never reviewed source code nor has he used source code review tools.  (Ex. 12, 27:20-23.) *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc*., No. 07-127-LPS-MPT, 2014 WL 529983, at *5 (D. Del. Feb. 7, 2014)(excluding infringement expert because expert because he was not qualified to testify as to the design of components).   Berg has never even programmed in C++, the source code language used in many of the printouts he "skimmed" in rendering his infringement opinions.   (Ex. 12, 27:20-23,98:25-99:5,191:8-25,233:1-4.)  Nor did Berg use any of the Accused Products.  (*Id.*, 99:6-24,101:7-16,102:4-10.)  Berg may be qualified to serve as an expert in some field, but not regarding the design and operation of advanced EDA tools.

Allowing Bell to present Berg as a technical expert on the design, structure and operation of advanced EDA tools with only one semester's worth of circuit

design classes on his resume (Ex. 12, 11:12-12:6) and no source code review experience, let alone EDA source code experience (*id.*, 27:20-23), to render opinions on infringement and invalidity runs afoul of Rule 702 and undermines the role an expert serves in aiding the trier of fact.

### 2. Berg's conclusions on infringement and validity are not supported by reliable methodology.

Admissible expert opinions must be "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d. Cir. 1994)(quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)). For a party "to establish infringement every limitation set forth in a patent claim must be found in an accused product or process exactly or by a substantial equivalent." *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991). Thus, the "patentee's expert must set forth the factual foundation for his infringement opinion in sufficient detail for the court to be certain that features of the accused product would support a finding of infringement under the claim construction adopted by the court...." *Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009).

Berg's infringement analysis amounts to skimming source code printouts selected by others that account for a tiny fraction of the total source code and consist mostly of search results. (Ex. 12, 27:20-23,98:25-99:5,178:16-23,179:18-20, 191:8-

25,193:7-194:2,233:1-4.)   For at least one of the three Accused Products, he reviewed no code at all.  (*Id.*, 199:8-200:17.)  Without having inspected the full source code, Berg cannot say whether a line of code is used; if used, how; or what affect it has on the operation of the products.  As a result, Berg was unable to say how the Accused Products differed (*id.*, 112:12-22) or which Products allegedly infringe (*id.*, 154:17-155:14 ("I haven't made a full determination of whether all of them [infringe] or whether it's specific to one")).  Without having ever used the products, Berg cannot testify to their operation without speculating.  (*Id.*, 102:4-10.)

Further, Berg provides no evidence as to how Synopsys or its customers use the tools.  (Ex. 18, ¶¶168-79 (citing no evidence of use).)  For example, ███████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████ (Ex 12, 110:21-24.)  Berg cannot opine as to the contents or use of the deck, including as to whether a separate, specific deck is generated from it, when he has seen no "physical design rule decks."  Nor can he opine that products infringe without having used them or seeing their code.  (*Id.*, 154:17-155:14.)  Berg's opinions are inadmissible conjecture about how the tools might operate and how they might be used.

The Berg Report generally opines that Synopsys infringes the Asserted Patents.  (Ex. 18, ¶14.)  In reaching these opinions, Berg dedicates ***two paragraphs*** to each Asserted Patent and concludes ████████████████████████████

█████████████████████  (Ex. 18, ¶¶170-79.)  Berg cites to a chart for each patent,

████████████████████████████████████████████████

██████████████████████████████████████████████  (*Id.*,

¶¶171,173,175,177,179.)   Berg testified he did not develop these infringement

theories, which were prepared by Bell's counsel prior to Berg's involvement; he was

simply asked to "validate" them.  (Ex. 12, 151:18-153:25.)  Such abbreviated, non-

specific analyses are routinely excluded by courts.  *See, e.g.*, *Magnetar Techs.*, 2014

WL 529983, at *6-12 (excluding similar infringement expert report because it was

"void of the necessary analysis for comparing each element of the claim to the

accused product" and consisted of "data and a conclusion, with the chasm between

not bridged by any analysis").  So too here.

Berg's exhibits—which are the sole support for his conclusions that the

Accused Products infringe—████████████████████████████████████

████████████████████████████████████████  (*See, e.g.*, Ex. 18,

Ex. B at [1.pre]-[1.a], Ex. F at [1.pre]-[1.a], Ex. A at [1.pre]-[1.a].)  Berg's charts do

not contain any analysis of the commands or code cited in them, no explanation as

to how they meet the claims as construed, or analysis of under what conditions the

cited code and commands are executed by the Accused Products.  Instead, they are

███████████████████████████████████████████████████

████████████████████  This is not surprising, as Berg testified that he did not review the

source code for the Accused Products, relying on counsel to select printed portions for him, and that in some instances he reviewed the cited source code for the first time at his deposition. (Ex. 12, 94:12-95:1,97:3-20,184:20-186:4,191:18-192:2.)

The opinions in Sections XV.B through XXI of his Rebuttal Report, which respond to invalidity opinions raised by Synopsys' experts, repeat these errors. Berg simply states his conclusion and cites to charts that list the asserted claims and provide statements supported only by Berg's say-so. (Ex. 37, ¶¶136-57 (citing to Exs. A-F).) Berg's opinions in his Reply Report regarding the doctrine of equivalents offer even less analysis. Berg simply recites the opinion of Synopsys' expert and states that ███████████████████████████████████████ ████████████████████████████████ without analysis or support. (Ex. 19, ¶¶35,63,66,68.) A court need not "admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *General Electric Company v. Joiner*, 522 U.S. 136, 146 (1997). With "simply too great an analytical gap between" the Berg Reports and his opinions, the opinions must be excluded. *Id.*

### 3. Berg's rebuttal report offers inadmissible legal opinions.

Sections XIV and XV.A of Berg's Rebuttal Report reflect inadmissible legal opinions and opinions on "the governing law of the case." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006). Courts in this District typically exclude expert opinions on "substantive issues of patent law," and Berg's opinions should

be similarly excluded.  *Lannett Co. Inc. v. KV Pharm., Drugtech Corp.*, No. 08-338-JJF, 2009 WL 10657988, at \*4 (D. Del. Mar. 9, 2009).

In Section XIV, Berg opines that the Asserted Patents are patent eligible under §101, and in Section XV.A, he opines that the Asserted Patents are valid under §112. His opinions consist of legal argument, not expert opinion.  *See BASF Corp. v. Johnson Matthey, Inc.*, No. 14-1204-RGA, 2018 WL 2729123, at \*1 (D. Del. June 6, 2018) (excluding opinions on legal principles).  Berg does not rely on any "particular expertise" in interpreting the factual record, instead parroting the legal argument provided to him by Bell's counsel—the type of testimony that usurps the role of the Court.  *Berckeley Inv. Grp.*, 455 F.3d at 217.

### B.    Daubert No. 2:  Bell's Damages Expert Should Be Excluded

Patentees often attempt to meet the burden of proving damages by offering expert testimony regarding the royalties received for licensing the patents at issue. *See Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1324 (Fed. Cir. 2009); *see also Georgia-Pacific Corp. v. U.S. Plywood Corp*., 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970).  But prior licenses are "almost never perfectly analogous" and expert testimony relying on prior licenses "must account for [] distinguishing facts." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227-28 (Fed. Cir. 2014).  Bell falls woefully short of meeting its burden, as its proffered damages expert concedes that he did no such analysis and ignored the facts of this case.

14

### 1. Kesan's methodology relies entirely on a single settlement agreement.

Kesan acknowledges that the *Georgia-Pacific* factors must be analyzed in assessing a reasonable royalty rate, but then centers his entire analysis on a single agreement, the Cadence Settlement.  (Ex. 16, ¶¶159-61.)  Kesan's reliance on a single settlement agreement renders his analysis unreliable.  Settlement agreements "are tainted by the coercive environment of patent litigation [and] are unsuitable to prove a reasonable royalty ... [under a *Georgia-Pacific* analysis], the premise of which assumes a voluntary agreement will be reached between a willing licensor and willing licensee, with validity and infringement of the patent not being disputed."  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012).  If an expert does rely on a settlement agreement, that expert must "consider the nature of the patent-in-suit, the accused products, or either party's litigation strategy."  *MAZ Encryption Techs. LLC v. Blackberry Corp.*, No. 13-304-LPS, 2016 WL 4490706, at *2 (D. Del. Aug. 25, 2016).

Here, Kesan "fails to undertake any analysis of the underlying litigation that led to the settlement."  *ART+COM Innovationpool GmbH v. Google Inc*., 155 F.Supp.3d 489, 511-12 (D. Del. 2016).  Instead, he simply applies a cursory 25% likelihood of success (Ex. 13, 200:16-201:9), which does not satisfy the requirement that experts must analyze the underlying litigation.  *See MAZ Encryption Techs.*, 2016 WL 4490706, at *2 (expert's calculation of a reasonable royalty rate based on

15

a settlement agreement that applied a 40% likelihood of success based on a study of litigation in the District of Delaware was "not reliable"); *see also Avocent Redmond Corp. v. Rose Elecs.*, No. C06-1711RSL, 2013 WL 8844098, at \*5 (W.D. Wash. Mar. 11, 2013) (striking expert testimony that was based on an adjustment based on the fact that "patent holders are successful in only 33% of cases nationwide").

Furthermore, Kesan was required to "account for differences in the technologies and economic circumstances of the contracting parties" between the Cadence Settlement and the hypothetical negotiation between Bell and Synopsys, but instead he ignores critical differences.  *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010).  For example,



(Ex. 16, ¶140; Ex. 13, 124:1-128:6.)  Kesan also ignores

(Ex. 7, 60:1-62:18.)

Furthermore, even though

Kesan dismissed this fact by stating that "Bell Semic has never entered into a license for a single patent," (Ex. 16, ¶120), ignoring the fact that it was LSI, not Bell, that owned the Asserted Patents at the time of his hypothetical negotiation and ignoring his obligation to limit the damages

calculation "to products that were actually used to perform the claimed method." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc*., 30 F.4th 1339, 1357 (Fed. Cir. 2022). Although Kesan later admits this error (Ex. 38, ¶¶42-58), he fails to take into account LSI's cooperative commercial relationship with Synopsys, which is likely to result in a different negotiation than one between Bell and Synopsys. (Ex. 13, 46:18-53:5.)

Lastly, Kesan ignores, with no articulated basis, several other potentially relevant license agreements, making clear that he simply cherry-picked the Cadence Settlement. (Ex. 16, ¶¶124-33.)

> ### 2. Kesan's damages calculation fails to apply the *Georgia-Pacific* factors and is not sufficiently tied to the facts of this case.

Kesan's calculation of a reasonable royalty rate for the Asserted Patents also ignores several key factors that he was required to consider in conducting a hypothetical negotiation under *Georgia-Pacific*. Rather than analyze these factors himself, Kesan just assumed that these factors were considered by the parties in reaching the Cadence Settlement. (Ex. 13, 173:5-174:10.) The result is a damages calculation founded on a series of unsupported assumptions that fails to "reflect the value of patented technology." *Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1301 (Fed. Cir. 2019).

First, Kesan fails to conduct any analysis of the economic demand for the Asserted Patents or assessment of the value of the Asserted Patents. *Uniloc USA Inc.*, 632 F.3d at 1292. Kesan simply assumes that the parties to the Cadence Settlement would have assessed the value of the Asserted Patents in reaching the ██ ████ settlement amount, but could offer no facts, documents, or analysis to support that assumption. (Ex. 13, 173:16-192:13.) "The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product," *Ericsson*, 773 F.3d at 1226, and Kesan makes no effort to analyze this incremental value of the Asserted Patents.

Second, Kesan fails to conduct any apportionment analysis (Ex. 16, ¶¶153,157), in blatant disregard of the requirement that patentees "apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features using reliable and tangible evidence." *Ericsson*, 773 F.3d at 1226 (Fed. Cir. 2014). Kesan simply assumes that the parties to the Cadence Settlement conducted such analysis in reaching that agreement. (Ex. 13, 70:8-78:11,147:1-154:13.) The Court must exercise "its gatekeeping authority to ensure that only theories comporting with settled principles of apportionment [are] allowed to reach the jury." *VirnetX, Inc. v. Cisco Systems*, 767 F.3d 1308, 1328 (Fed. Cir. 2014). For all of these reasons, Kesan's damages calculation fails to apply the *Georgia-Pacific* factors in a reliable manner and must be excluded.

## II. BELL'S EXPERT REPORTS MUST BE STRICKEN UNDER RULE 37.

Rule 37 provides: "If a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Expert reports that rely on undisclosed information may be stricken. *See, e.g.*, *INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*, No. 11-1007-SLR-CJB, 2013 WL 3216109, at *2 (D. Del. June 25, 2013). As discussed during the August 9 teleconference, Bell's expert reports raise new theories and should be stricken in the absence of good cause. (D.I. 181, 17:22-18:16.)

### A. Undisclosed Theories Relied Upon by Berg

The Berg Reports rely on theories of infringement that Bell failed to timely disclose as required by this Court's Scheduling Order (D.I. 73) and thus must be stricken pursuant to Rule 37.

Bell served its Infringement Disclosures on May 12, 2023, supplementing without leave from the Court on June 8 and July 19. The Scheduling Order required Bell to disclose which specific elements it viewed as "equivalents" to the Asserted Patents (D.I. 73, ¶3(e)), and instead of doing so, Bell inserted pro forma language that "to the extent that Plaintiffs attempt to allege that any asserted claim element is not literally met, Bell Semic believes and contends that such elements are met under

19

the doctrine of equivalents." (Ex. 14, Exs. 1-2 at 2, 2-2 at 2, 3-1 at 2, 4-2 at 2, 5-2 at 2, 6-2 at 2.) Synopsys raised these deficiencies multiple times. (*See* Ex. 17, p.3; D.I. 181, 16:8-23:9.) Yet, the Berg opined, ***for the first time in his Reply Report***, that certain functions of the Accused Products infringe the Asserted Patents based on the doctrine of equivalents. (*See, e.g.*, Ex. 19, ¶¶35,39,63,66,68 (describing Accused Products as "equivalent" and "effectively the same" as claims).)

Similarly, as further explained in MSJ No. 2 of No Indirect Infringement, filed contemporaneously, Bell did not identify any direct infringer or description of the acts that allegedly contribute or induce that infringement as it was required to do. (D.I. 73, ¶3(d).) Again, Synopsys raised these deficiencies (Ex. 17, p.3) but Bell never rectified them. To the extent its expert reports attempt to fix them now, it is too late.

Bell has not "provided any evidence or given any explanation as to why" its new equivalents theories or indirect infringement details were not disclosed during fact discovery and therefore, Bell's failure to disclose is not substantially justified. *Lab'y Skin Care, Inc. v. Ltd. Brands, Inc*., 661 F. Supp. 2d 473, 479 (D. Del. 2009). Nor is Bell's failure to comply with this Court's Scheduling Order harmless under the *Pennypack* factors. *See id.* (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)). Proper disclosure of Bell's alleged "equivalents" would have impacted how the parties approached claim construction

and which prior art Synopsys would have explored during fact discovery.  Proper disclosure of indirect infringement allegations would also have led to third-party discovery of the purported direct infringers.  Now, Synopsys is deprived of its opportunity to pursue discovery on these issues. *See INVISTA N. Am. S.a.r.l.*, 2013 WL 3216109, at *3 (striking expert opinion based on undisclosed theories of invalidity); *TQ Delta, LLC v. Adtran, Inc.*, No. 13-1835-RGA, 2021 WL 3202077, *2 (D. Del. July 31, 2020)(striking a doctrine of equivalents theory disclosed for the first time in a reply report because a belated doctrine of equivalents theory is "not a mere correction of information, but instead, creates a new ballgame").  This is precisely the result that the Court's Scheduling Order is designed to avoid.

## B.  Undisclosed Documents and Theories Relied Upon by Kesan

Bell also failed to disclose information relied upon by Kesan regarding its theory and computation of damages.

Per the Federal Rules and the Scheduling Order, Bell was required to disclose the "timing of the point of first infringement," "the start of claimed damages" and "a computation of each category of damages" and "the documents or other evidentiary material. . . on which each computation is based."  D.I. 73 at 3(h); Fed. R. Civ. P. 26(a)(1)(iii).  Bell made no such disclosure, only stating that "a determination of a reasonable royalty cannot be made at this time" and it "will rely on a damages expert."  (Ex. 39, p.10.)  In the face of Bell's flouting of these

requirements, Synopsys served Interrogatories.  Once again, Bell did not identify the facts supporting its damages claim—including the purported hypothetical negotiation date (*i.e.*, the point of first infringement) or the start of claimed damages—simply incorporating its forthcoming damages report by reference.  (Ex. 40, Rogs 1,9; Ex. 11, Rogs 23,30.)

Instead, Bell produced a series of licensing agreements and waited until the Kesan Report to reveal that its damages expert would, in fact, not conduct a damages analysis and instead rely on adjustments to a single settlement agreement, a previously undisclosed 2009 hypothetical negotiation date and a previously undisclosed start of claimed damages (using revenues over the past 6 years).  Moreover, the only source for Kesan's conclusions about the importance of the Asserted Patents are two declarations submitted by Bell in an entirely separate litigation, ***which were only raised by Bell for the first time in Kesan's Reply Report***.  (Ex. 13, 59:5-19,64:2-65:14,155:2-156:20,159:8-160:5,182:12-18,188:5-15,189:21-190:7; Ex. 38, ¶¶29,35,41.)  Bell failed to disclose these declarations as required by Rule 26(a) and should not be permitted to circumvent its discovery obligations in this case by parachuting in expert testimony from another litigation.  *Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc*., No. 17-1734-RGA, 2021 WL 979307, at \*8 (D. Del. Mar. 16, 2021) (expert opinion that relies on expert opinion from another litigation should be stricken as a violation of Rule 26); D.I. 181 at Tr. 12:6-

16 (noting another instance of Bell "inappropriate[ly] just relying on testimony from another case").  Kesan's damages calculation must be stricken due to Bell's failure to comply with its disclosure requirements.

## CONCLUSION

For the foregoing reasons, the expert opinions of Berg and Kesan should be excluded under Rule 702.  The opinions of Berg and Kesan, even if admissible, must be stricken because the infringement theories applied by Berg and the damages calculation from Kesan rely on documents and theories that Bell failed to timely disclose.

Dated: September 26, 2023

OF COUNSEL:

Krista S. Schwartz
Barrington Dyer
Brandon K. Franklin
Jacob Karim
WILLKIE FARR & GALLAGHER LLP
One Front Street
San Francisco, CA 94111
(415) 858-7400
kschwartz@willkie.com
bdyer@willkie.com
bfranklin@willkie.com
jkarim@willkie.com

Shaimaa Hussein
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
shussein@willkie.com

Aliza George Carrano
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006
(202) 303-1000
acarrano@willkie.com

*Attorneys for Synopsys, Inc.*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
pkraman@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

*Attorneys for Synopsys, Inc.*

24

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that the foregoing brief is in Times New Roman 14-point font and contains 5,356 words, exclusive of caption, tables, and signature block, counted using Microsoft Word's word count feature.

OF COUNSEL:

Krista S. Schwartz
Barrington Dyer
Brandon K. Franklin
WILLKIE FARR &
GALLAGHER LLP
One Front Street
San Francisco, CA 94111
(415) 858-7400
kschwartz@willkie.com
bdyer@willkie.com
bfranklin@willkie.com

Shaimaa M. Hussein
WILLKIE FARR &
GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
shussein@willkie.com

Aliza George Carrano
WILLKIE FARR &
GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006
(202) 303-1000
acarrano@willkie.com

Dated: September 18, 2023

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
pkraman@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

*Attorneys for Synopsys, Inc.*

1